STATE of Minnesota, Respondent,

v.

**John Sheldon DICK, Appellant.**

No. C3–01–833.

Court of Appeals of Minnesota.

Feb. 5, 2002.

Mike Hatch, Attorney General, Robert A. Stanich, Assistant Attorney General, Caia Johnson, Certified Student Attorney, St. Paul, MN; and Earl E. Maus, Cass County Attorney, Cass County Court-house, Walker, MN, for respondent.

John M. Stuart, Minnesota Public Defender, Leslie J. Rosenberg, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by STONEBURNER, Presiding Judge, SHUMAKER, Judge, and HALBROOKS, Judge.

## OPINION

STONEBURNER, Judge.

On appeal from convictions of first-degree burglary and terroristic threats, appellant John Sheldon Dick argues that (1) the district court abused its discretion by failing to sever two burglary charges brought against him; (2) the evidence was insufficient to establish that he intended to terrorize police officers; (3) the district court abused its discretion by refusing to instruct the jury on transitory anger as an exception to the charge of terroristic threats; and (4) the district court abused its discretion by imposing consecutive sentences on him for his convictions. Dick also raises several pro se arguments. Because the burglary charges arose out of a single course of conduct, the evidence was sufficient to support the conviction of terroristic threats and the court did not err in instructing the jury or in sentencing, we affirm.

## FACTS

In the early morning hours of September 4, 2000, Mr. and Mrs. Frei, cabin owners in Cass County, heard a noise in the drive-out, garage-storage area under their cabin. They looked out and saw a car in the driveway. At about the same time, they heard the car leaving the yard and saw taillights. After a discussion about calling the sheriff, Mr. Frei checked the yard where he found a small gas can from his storage area. As he came back

into the cabin, an alarm went off in an unoccupied cabin located about 1/2 mile from the Freis' cabin. The Freis thought that the alarm would notify the Sheriff. They sat up for a while longer, then returned to bed, leaving lights on in the cabin and the yard. Sometime later Mrs. Frei saw the driveway light up from a car's headlights and heard a car in the driveway. The Freis got up, turned on all of the lights and called 911 to report that someone had been in their basement, left and was coming back again. The car left the Freis' yard again.

Officers dispatched to the area encountered the car coming out of the driveway of the unoccupied cabin onto the secluded, one-lane road that leads to the two cabins. The officers stopped the car and identified Dick as the driver. Dick told the police he had been banging on the door of the unoccupied cabin trying to get gas. There was a red, five-gallon gas can and a case of beer on Dick's passenger seat. The Freis later identified the gas can and the case of beer as having come from their storage area.

The officers checked the unoccupied cabin and found that the cabin had been broken into and that the security keypad for the alarm system was ripped off of the wall. Dick, who was very intoxicated, became agitated when officers told him he was under arrest. Dick tried to kick out the back windows of the squad car and fought with officers when they tried to shackle his wrists to his ankles. He spit in one officer's face and attempted to bite another. After he was shackled, Dick threatened to find out where the officers lived and kill them. He continued to yell obscenities and threats during transport to the law enforcement center.

The district court denied, without comment, Dick's motion to sever the burglary charges for trial. A jury acquitted Dick of

burglary in the second degree (unoccupied cabin) but found him guilty of burglary in the first degree (occupied cabin) and terroristic threats. This appeal followed.

## ISSUES

I. Did the district court abuse its discretion by refusing to sever the charges of first-degree burglary and second-degree burglary?

II. Did the evidence presented at trial sufficiently support the jury's conviction of Dick for terroristic threats?

III. Did the district court abuse its discretion by refusing to give Dick's requested jury instruction on transitory anger?

IV. Did the district court abuse its discretion by imposing consecutive sentences for first-degree burglary and terroristic threats?

V. Is Dick entitled to a new trial or a reduction in sentence based on his pro se arguments?

## ANALYSIS

### I. Severance

1. Denial of motion to sever burglary charges

We review the denial of a motion to sever under an abuse of discretion standard. *State v. Dukes*, 544 N.W.2d 13, 20 (Minn.1996). Minn. R.Crim. P. 17.03, subd. 1 permits a defendant to be charged in the same complaint with more than one offense. On motion, the court shall sever offenses for trial if:

(a) the offenses or charges are not related;

(b) before trial, the court determines severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense or charge; or

(c) during trial, with the defendant's consent or upon a finding of manifest necessity, the court determines severance is necessary to achieve a fair determination of the defendant's guilt or innocence of each crime.

Minn. R.Crim. P. 17.03, subd. 3(1). Pursuant to the rule, a district court must first decide whether the joined offenses are related, and if so, the court must decide whether severance is nonetheless required because joinder would be prejudicial. *State v. Profit*, 591 N.W.2d 451, 459 (Minn. 1999).

Offenses are related when they are "part of a single behavioral incident or course of conduct." *Id.* at 458 (citations omitted). In determining whether the offenses are part of a single behavioral incident or course of conduct, courts examine (1) "how the offenses were related in time and geographic proximity;" and (2) "whether the actor was motivated by a single criminal objective." *Dukes*, 544 N.W.2d at 20 (holding that the district court did not abuse its discretion in refusing to sever trials "where the time between the two crimes was a matter of only a few minutes, the proximity was within one block, and each crime was motivated by the objective of obtaining money through robbery.") Here, Dick told the police he had been banging on the door of the unoccupied cabin, looking for gas. The alarm at the unoccupied cabin went off within fifteen minutes of the Freis having heard someone in their storage area and having seen a car leave their driveway. The Freis' small gas can was taken from their storage area and left on their yard. A five-gallon gas can and a case of beer taken from the Freis' storage area was found in Dick's car. The Freis saw a car come up their driveway after the alarm went off in the unoccupied cabin. Only Dick's car was found in the area.

The proximity of the cabins, the timing, and Dick's stated objective of looking for gas support the district court's conclusion that Dick's presence at each cabin was part of a single course of conduct. Because the two incidents were sufficiently related to be joined for trial, the district court was not required to grant Dick's motion to sever unless it determined that severance was appropriate to avoid prejudice. Here there is no record indicating that the district court considered the necessity of severance to avoid prejudice.

■ Dick argued that whether severance was nonetheless appropriate because of prejudice must be determined by this court under a *Spreigl* analysis for admissibility of other crimes evidence. We disagree.

■ A *Spreigl* analysis is required to determine whether joinder of *unrelated* offenses was prejudicially erroneous. *Profit,* 591 N.W.2d at 460–61 (stating that analysis for *Spreigl* evidence is useful framework for evaluating possible prejudicial effect of improperly joining unrelated offenses); *State v. Kates,* 610 N.W.2d 629, 631 (Minn.2000) (rejecting harmless error analysis for review of improper joinder of unrelated offenses, citing *Profit,* as holding that *Spreigl* analysis is proper framework for evaluating whether such joinder is so prejudicial that reversal is necessary). But there is no authority for the proposition that the propriety of joinder of related offenses *must* be analyzed on appeal under *Spreigl.*

■ We are mindful of this court's holding that where a defendant has been acquitted of an *unrelated* criminal charge, the *Spreigl* test cannot be met as to that charge because it cannot be said that there is clear and convincing evidence that a defendant committed an offense of which he has been acquitted. *State v. Kates,* 616

N.W.2d 296, 300 (Minn.App.2000), *review denied* (Minn. Oct. 25, 2000). It would be absurd to conclude that joinder of related offenses is erroneous as a matter of law if a defendant is acquitted of one of the charged offenses. Here, Dick admitted to police of having been present at the unoccupied cabin. He was apprehended in the cabin driveway while the cabin alarm was sounding with items from the Freis' cabin in his car. We hold that, under the facts of this case, the district court did not abuse its discretion by denying Dick's motion to sever the related burglary charges for trial.

2. Failure to instruct jury to consider charges separately

■ Dick correctly argues that the district court erred by failing to instruct the jury that each charge must be considered separately. *See Kates,* 610 N.W.2d at 631 (requiring that for trial of all offenses joined under Minn. R.Crim. P. 17.03, subd. 1, the jury must be instructed to consider each of the charges separately). Dick did not object to the jury instructions. Generally, failure to object to jury instructions before they are submitted to the jury results in a waiver of the right to raise the issue on appeal. *State v. Richardson,* 633 N.W.2d 879, 885 (Minn.App.2001).

■ This court may review "unobjected-to jury instructions 'if the instructions contain plain error affecting substantial rights or an error of fundamental law.'" *Id.* (quotation omitted). But a new trial for error in jury instructions is not required if the error was harmless. *Id.* By acquitting Dick of one charge, the jury demonstrated that it clearly understood that the charges should be considered separately. Therefore, in this case, failure to give the required instruction was harmless error.

## II. Sufficiency of evidence of terroristic threats

In considering a claim of insufficient evidence, this court's review is limited to a careful analysis of the record to determine whether the evidence when viewed in the light most favorable to the conviction, is sufficient to allow the jurors to reach the verdict that they reached. *State v. Webb,* 440 N.W.2d 426, 430 (Minn. 1989). The reviewing court will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense. *State v. Alton,* 432 N.W.2d 754, 756 (Minn.1988).

A conviction "based entirely on circumstantial evidence merits stricter scrutiny than convictions based in part on direct evidence." *State v. Jones,* 516 N.W.2d 545, 549 (Minn.1994) (citations omitted). "While it warrants stricter scrutiny, circumstantial evidence is entitled to the same weight as direct evidence." *State v. Bauer,* 598 N.W.2d 352, 370 (Minn. 1999) (citation omitted). The circumstantial evidence must form a complete chain that, in view of the evidence as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt. *Jones,* 516 N.W.2d at 549. A jury, however, is in the best position to evaluate circumstantial evidence, and its verdict is entitled to due deference. *Webb,* 440 N.W.2d at 430.

A person is guilty of terroristic threats if he

[t]hreatens * * * to commit any crime of violence with purpose to terrorize another * * * or in a reckless disregard of the risk of causing such terror * * *.

Minn.Stat. § 609.713, subd. 1 (2000). Dick contends that he was making drunken threats without "conscious effort to have his threats taken seriously." He argues his conduct may have risen to the level of disorderly conduct but not terroristic threats. The district court appropriately instructed the jury that voluntary intoxication is not a defense to a crime but that the jury should consider whether the defendant was capable of forming the required intent. 10 *Minnesota Practice,* CRIMJIG 7.03 (1999); *see also State v. Torres,* 632 N.W.2d 609, 617 (Minn.2001) (stating that "the possibility of intoxication does not create the presumption that a defendant is thereby rendered incapable of intending to do a certain act" (citation omitted)). Dick's contention that he lacked the requisite intent to commit terroristic threats because he was intoxicated was clearly rejected by the jury. According to the testimony, Dick threatened to kill the officers, to "find out where [the officers lived]," and to "skin" an officer. Dick was rageful. He spit at an officer and tried to bite and kick an officer. A reasonable jury could conclude, based on the testimony of the officers, that Dick's threats satisfied the elements of the charge.

## III. Failure to instruct on transitory anger

Dick argues that the district court abused its discretion by refusing to give his proposed instruction that

[t]he terroristic threat statute was not intended to penalize verbal threats expressing transitory anger. Transitory anger is short-lived anger that by its nature is not intended to terrorize.

The district court reasoned that the standard jury instruction on terroristic threats was sufficient. We agree. Although the charge of terroristic threats is not meant to encompass verbal threats expressing

transitory anger without intent to terrorize, there is no authority for Dick's contention that failure to include that language in a jury instruction is reversible error. *See State v. Jones,* 451 N.W.2d 55, 63 (Minn. App.1990), *review denied* (Minn. Feb. 21, 1990). The district court properly instructed the jury on the elements of terroristic threats, including instructions on the meaning of "intent" and "reckless disregard" and permitted Dick's counsel to argue transitory anger. The court did not abuse its discretion by denying the proposed instruction on transitory anger. *See State v. Lavastida,* 366 N.W.2d 677, 680 (Minn.App.1985) (holding that instructions for terroristic threats were proper even though the court failed to instruct on transitory anger).

## IV. Sentencing

Dick agrees that the Minnesota Sentencing Guidelines permit imposition of consecutive sentences for multiple felony convictions for crimes against persons, but argues that imposition of consecutive sentences in this case unfairly exaggerates the criminality of his acts and constitutes an abuse of discretion. *See State v. Goulette,* 442 N.W.2d 793, 794 (Minn.1989) (noting multiple victim exception permits consecutive sentencing without citing aggravating circumstances unless it would unfairly exaggerate criminality of defendant's conduct). Specifically, Dick argues that his extreme intoxication at the time of his crimes mitigates the seriousness of his offenses.

A reviewing court determines whether consecutive sentencing exaggerates criminality by examining sentences in similar cases. *State v. Lee,* 491 N.W.2d 895, 902 (Minn.1992). We are not persuaded that the district court abused its discretion or unfairly exaggerated Dick's criminality by imposing consecutive sentences in this case and we reject the argument that intoxication is a mitigating factor.

## V. Issues raised in pro se brief

The district court declined to address issues raised by Dick in his untimely motion for a new trial. Dick raises those issues in his pro se brief on appeal, arguing that he is entitled to a new trial or a reduction in sentence based on the interests of justice, alleged misconduct of the prosecutor, alleged irregularity in the proceedings, alleged undisclosed "newly discovered evidence," alleged *Miranda* violations and alleged destruction of evidence. Our careful review of the record leads us to conclude that none of these claims have merit.

## DECISION

The district court did not abuse its discretion by (1) refusing to sever the two counts of burglary against Dick; (2) refusing to instruct the jury on transitory anger; and (3) imposing consecutive sentences on Dick for his convictions. The state presented sufficient evidence at trial such that a reasonable jury could find that Dick committed the crime of terroristic threats. Dick's pro se arguments are without merit.

**Affirmed.**