**STATE of Minnesota, Respondent,**

v.

**Jarrett Lanell JORGENSON, Appellant.**

**No. A07–1745.**

Court of Appeals of Minnesota.

Dec. 9, 2008.

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, St. Paul, MN; and Janelle Kendall, Stearns County Attorney, Stearns County Administration Center, St. Cloud, MN, for respondent.

Lawrence Hammerling, Chief Appellate Public Defender, Steven P. Russett, Assis-

tant Public Defender, St. Paul, MN, for appellant.

Considered and decided by HUDSON, Presiding Judge; BJORKMAN, Judge; and HUSPENI, Judge.

## OPINION

HUSPENI, Judge.*

Appellant Jarrett Jorgenson, in challenging his felony conviction and sentence for terroristic threats, seeks a new trial on the grounds that the district court erroneously instructed the jury. Alternatively, appellant alleges that there was insufficient evidence to sustain his conviction for terroristic threats. Although there was sufficient evidence to sustain appellant's conviction if the jury instructions had been adequate, the district court committed plain error affecting appellant's substantial rights in issuing the erroneous jury instruction, thus we reverse and remand for a new trial.

## FACTS

In October of 2006, appellant and the victim, T.S., had been in a romantic relationship for about two years and had lived together for several months. There had been violence between them on three occasions, but T.S. had never called the police or sought medical attention before the incident from which this case arose.

On the evening of October 12–13, 2006, appellant and T.S. were out drinking until approximately 2:00 a.m. T.S. testified that when they left the bar, appellant seemed "overly drunk." After they arrived home, T.S. and appellant smoked marijuana, had sex, and then appellant passed out on the couch. Shortly thereafter, T.S. noticed that appellant was urinating and defecating on himself so she tried to wake him by shaking his shoulder and patting him hard in the face. Appellant came to, began swinging his arms and hit T.S. in the face about ten times with his open hand. Appellant then went into the bedroom and fell asleep.

Angry that appellant had hit her, T.S. destroyed one of his video games using a knife and left the game on the table in the living room. Around 4 a.m., she decided to leave and packed some of her things, but then realized she was in no condition to drive so she went to sleep, wearing a large shirt for a nightgown.

When appellant awoke in the morning, he went into the living room, saw his damaged video game, and went into the bathroom to shower. T.S. testified that while in the shower, appellant started singing about how he was going to "kick the sh— out of me, throw me down the stairs, fu— in' hit me for ruining his game." Appellant repeated that refrain over and over again. At that time, T.S. did not think appellant would follow through with these threats because he had never done anything like that before. T.S. testified that appellant got out of the shower, entered the bedroom, and began hitting her in the head with open and closed fists. T.S. covered her head to protect herself as appellant hit her at least 20 times over a 15 to 20–minute period.

T.S. told appellant that she was going to call the police and eventually reached her cell phone in the living room to call 911. As she was on the phone with the dispatcher, appellant tried to grab the phone out of her hand. The transcript of the 911 call shows that T.S. was screaming as the

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

dispatcher tried to ascertain T.S.'s location. Appellant succeeded in grabbing and closing T.S.'s cell phone, thereby disconnecting her call to the 911 operator.

After appellant disconnected the 911 call, he grabbed T.S. by her waist and then by her hair, and pushed and kicked her down the stairs. Appellant pushed T.S., who was still only wearing the large shirt, outside of the apartment into the cold and locked the door. About five minutes later, a St. Cloud police officer arrived in a squad car. The officer saw T.S. sitting outside on the ground, approximately four to five feet from the front door. She was curled up, had her knees pulled up to her chest, and her arms wrapped around herself, and was visibly shaking and crying very hard. The officer put T.S. in the squad car to keep her warm. The officer testified that as T.S. described what happened, she was still crying, visibly shaken, and appeared scared.

The responding officer and another officer who had arrived to assist, knocked on the door and tried to talk to appellant through some open windows, but he ignored them and turned his music up louder. About five minutes after the officers first tried to speak with appellant, he spoke to the officers through the window and eventually opened the door. Appellant was upset that the police were there, and before the officers said anything, appellant stated that he knew he was going to jail. Appellant told police that he did not hurt T.S. and only "helped" her down the stairs and locked the door behind her after she damaged his video game.

The police took T.S. to the hospital and photographed T.S.'s hands and arm. T.S. was treated for tender ribs, bruises to her arms, abrasions on her knuckles, and numbness on the side of her head.

After appellant was arrested, police obtained a formal statement from him at the jail. He appeared very upset about his video game and again stated that he had "helped" T.S. go down the stairs that morning. When asked how T.S. sustained her injuries, appellant replied that she had fallen into a hole in their yard three days before.

Appellant was charged with terroristic threats under Minn.Stat. § 609.713, subd. 1 (2006); misdemeanor domestic assault under Minn.Stat. § 609.2242, subd. 1(2) (2006); and interference with an emergency call under Minn.Stat. § 609.78, subd. 2 (2006). A jury trial was held, and the instruction of the district court regarding the terroristic threats charge included the following:

First, the defendant *threatened,* directly or indirectly, *to commit a crime of violence. You are instructed that assault is a crime of violence.* It need not be proven that the defendant had the actual intention of carrying out the threat.

Second, the defendant made the threat with intent to terrorize another ... or in reckless disregard of the risk of causing such terror.

. . . .

Third, the defendant's act took place on or about October 13, 2006 in Stearns County.

(Emphasis added.) With respect to the misdemeanor domestic assault charge, the court instructed the jury that "whoever intentionally inflicts or attempts to inflict bodily harm upon a family member or household member is guilty of a crime." The instructions defined bodily harm as "physical pain or injury, illness, or any impairment of a person's physical condition."

The jury found appellant guilty of all three charged offenses, and the district court imposed a stayed 21–month prison

term on the terroristic threats conviction, which the district court executed at appellant's request. This appeal followed.

## ISSUES

1. Was there sufficient evidence for a jury to find that appellant threatened to commit a "crime of violence," of at least a severity level of third-degree assault, to support appellant's terroristic threats conviction?

2. Did the district court commit plain error affecting appellant's substantial rights when instructing the jury on the elements of terroristic threats by failing to delineate which types of assault constituted a "crime of violence"?

## ANALYSIS

### I.

Appellant first challenges the sufficiency of the evidence on the terroristic threats charge, arguing that the threats were, at most, threats to commit misdemeanor assaults, which are not "crimes of violence" under Minn.Stat. §§ 609.1095 or 609.713. The state responds that the evidence was sufficient for a jury to convict appellant of felony terroristic threats because appellant's statements constituted threats of at least third-degree assault. On this issue, the state makes the more persuasive argument.

In considering a claim of insufficient evidence, this court's review is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jurors to reach the verdict that they did. *State v. Webb*, 440 N.W.2d 426, 430 (Minn.1989). This is especially true when resolution of

the matter depends mainly on conflicting testimony because weighing the credibility of witnesses is the exclusive function of the jury. *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn.1980). Moreover, the reviewing court must assume the jury believed the state's witnesses and disbelieved any evidence to the contrary. *State v. Moore*, 438 N.W.2d 101, 108 (Minn.1989).

In viewing the evidence in the light most favorable to the conviction, we conclude that the jury was presented with sufficient evidence to find appellant guilty of making a threat of assault in the second or third degree.[1] Because we assume the jury believed the state's witnesses, we assume that the jury chose to believe the testimony of T.S., who testified that appellant repeatedly said that he was going to "kick the sh—" out of her, throw her down the stairs, and "fu—in' hit [her] for ruining [his] game."

The evidence was sufficient that a jury could find appellant guilty of making a threat to commit second-degree assault. Minnesota law provides that "[w]hoever assaults another with a dangerous weapon" is guilty of second-degree assault. Minn.Stat. § 609.222, subd. 1 (2006). A "dangerous weapon" is defined as an "instrumentality that, in the manner it is used or intended to be used is calculated or likely to produce death or great bodily harm." Minn.Stat. § 609.02, subd. 6 (2006). And "[g]reat bodily harm" means bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily harm. *Id.*, subd. 8. Depending on the circum-

---

1. Neither party argues that appellant threatened assault in the first degree. Therefore, we need not analyze first-degree assault.

stances of the assault, hands and feet may be dangerous weapons, even if the victim does not suffer great bodily harm. *State v. Davis*, 540 N.W.2d 88, 90–91 (Minn.App. 1995) (citations omitted), *review denied* (Minn. Jan. 31, 1996).

The evidence was sufficient for the jury to find that appellant threatened to use his feet and hands as a dangerous weapon. A threat to "kick the sh—" out of a person, throw someone down the stairs, and/or hit someone could be viewed as a threat to commit a crime of violence calculated or likely to produce death or great bodily harm. It is reasonable to conclude that a person could be at risk of a high probability of death, suffer serious permanent disfigurement, suffer a loss or impairment of a bodily function or other serious bodily harm from getting kicked or hit hard, pushed down stairs, or a combination of all three. Thus, we conclude there is sufficient evidence to find appellant's statements constitute threats to commit a second-degree assault.

■ We further conclude that the state presented sufficient evidence to enable a jury to find appellant guilty of making a threat to commit third-degree assault. One who "assaults another and inflicts substantial bodily harm" is guilty of third-degree assault. Minn.Stat. § 609.223, subd. 1 (2006). Substantial bodily harm "means bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily member or organ, or which causes the fracture of any bodily member." Minn. Stat. § 609.02, subd. 7(a) (2006). A jury could reasonably conclude that appellant's statements threatened the type of injury that could cause substantial harm, as defined by statute. Thus, appellant's statements could be construed as a threat to commit third-degree assault.

But our decision that the state presented sufficient evidence on the charged elements of terroristic threats cannot be determinative on the question of whether a new trial is warranted due to an erroneous jury instruction.

## II.

Appellant argues that he should receive a new trial because the district court instructed the jury that assault was a crime of violence for purposes of the terroristic threats statute without specifically delineating which types of assault, specifically first, second, and third degree, constituted crimes of violence. Appellant did not object to the instruction given by the district court, nor did he request different language to be used in the instruction on terroristic threats.

It is not uncommon that an appellate court finds that the state has presented sufficient evidence but concludes that a reversal is required on the basis of a trial error. *See State v. Clark*, 755 N.W.2d 241, 252–53, 256–58 (Minn.2008) (concluding that the state presented legally sufficient evidence to support convictions of aiding and abetting first-degree murder and conspiring to commit first-degree murder, but reversing and remanding for new trial because the district court's erroneous failure to instruct on accomplice testimony affected appellant's substantial rights); *State v. Malaski*, 330 N.W.2d 447, 450–53 (Minn. 1983) (concluding that the state presented evidence sufficient for a jury to convict, but reversing and remanding on grounds of erroneous, prejudicial jury instruction); *In re Welfare D.D.R.*, 713 N.W.2d 891, 906–07 (Minn.App.2006) (rejecting appellant's contention that evidence was insufficient to support conviction of third-degree criminal sexual conduct, but concluding that the cumulative effect of multiple trial errors, where the prosecutor misstated the

presumption of innocence, the district court failed to give a curative instruction, the district court improperly instructed the jury that the victim's testimony need not be corroborated, and the district court's prejudicial evidentiary rulings, collectively resulted in substantial prejudice warranting a new trial).

 District courts are given considerable latitude in the selection of language for jury instructions. *State v. Baird,* 654 N.W.2d 105, 113 (Minn.2002). A reviewing court will not reverse a district court's decision on jury instructions unless the district court abused its discretion. *State v. Persitz,* 518 N.W.2d 843, 848 (Minn. 1994). Before an appellate court reviews an unobjected-to error, there must be (1) error; (2) that is plain; and (3) that affects substantial rights. *State v. Griller,* 583 N.W.2d 736, 740 (Minn.1998) (citing *Johnson v. United States,* 520 U.S. 461, 466–67, 117 S.Ct. 1544, 1548–49, 137 L.Ed.2d 718 (1997)). If these three prongs are satisfied, the appellate court then assesses whether it should address the error to ensure fairness and the integrity of the judicial proceedings. *Griller,* 583 N.W.2d at 740.

### 1. The district court erred in its terroristic threats instruction.

 Appellant argues that the district court erred in instructing the jury, without further clarification, that "assault is a crime of violence." There is merit in appellant's argument that the instruction relieved the state of its burden to prove that appellant made a threat to commit a crime of violence of the magnitude required by statute.

The terroristic threats statute, under which appellant was convicted, provides in relevant part:

> Whoever threatens, directly or indirectly, to commit any crime of violence with purpose to terrorize another ... or in a reckless disregard of the risk causing such terror ... may be sentenced to imprisonment for not more than five years or to payment of a fine of not more than $10,000, or both. As used in this subdivision, "crime of violence" has the meaning given "violent crime" in section 609.1095, subdivision 1, paragraph (d).

Minn.Stat. § 609.713, subd. 1. The definition of "violent crime" includes first-, second-, and third-degree assault. Minn.Stat. § 609.1095, subd. 1(d) (2006) [2] (listing assault in the first degree, section 609.221; second degree, section 609.222; and third degree, section 609.223). But this definition does not include domestic assault, fourth-, or fifth-degree assault. *Id.* The legislature chose to exclude these offenses from the definition of "violent crime."

Further, CRIMJIG 13.107, which provides model instructions on the elements of terroristic threats, advises that the jury be instructed in part that, "The elements of making a terroristic threat are: First, the defendant threatened, directly or indirectly to commit a crime of violence. [*You are instructed that _____ is a crime of violence.*]" (Emphasis added.) The district court followed this CRIMJIG in instructing the jury using the language quoted above, but instead of advising the jury that only assault in the first, second, and third degree are crimes of violence, the court merely stated, "You are instructed that assault is a crime of violence."

**2.** *See State v. Adkins,* 706 N.W.2d 59, 60 (Minn.App.2005) (holding subdivision 4 of section 609.1095 unconstitutional as applied under *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004)). Subdivision 4 is not at issue in this case.

Commendably, the state concedes that appellant has met the first *Griller* prong. It was necessary here to inform the jury that not every assault is a crime of violence. An objection by the defense attorney or a suggestion from the prosecutor during the compilation of jury instructions could have aided the court in assuring that a correct and complete instruction was given. Unfortunately, this did not occur, and we conclude that the first prong of the *Griller* test is satisfied.

## 2. The district court's error was plain.

■ Having concluded that the district court committed error, we must next determine whether that error was plain. *Griller*, 583 N.W.2d at 740. Appellant argues that the district court's error in failing to differentiate between the levels of assault was plain. The state responds that the error was not plain because the defendant usually meets the burden of proving plain error by showing that the "error contravenes case law, a rule, or a standard of conduct." *State v. Ramey*, 721 N.W.2d 294, 306 (Minn.2006). And the state argues that there is no law, rule, or standard of conduct in existence on the failure to differentiate between levels of assault in cases where terroristic threats is charged.

But the failure to properly instruct the jury on all elements of the charged offense is plain error. *State v. Vance*, 734 N.W.2d 650, 658 (Minn.2007). We conclude that the jury was not properly instructed on all of the elements of the offense of terroristic threats. *See* Minn.Stat. § 609.713, subd. 1

(2006) (defining terroristic threats). A proper jury instruction on a terroristic threats charge must specifically limit the definition of "violent crime" to the applicable offenses listed in Minn.Stat. § 609.1095, subd. 1(d).[3] When instructing the jury on a charge of terroristic threats, the district court, in addition to including the language referring to violent crime, must ensure that the jury is instructed regarding which predicate offenses constitute a violent crime and which do not for purposes of the facts of a particular case.

Perhaps adding to the jury's possible confusion, the instructions given here defined misdemeanor domestic assault as the "intentional infliction of bodily harm." Thus, the jury was only informed of the elements of the lower-level crime of misdemeanor domestic assault and was never instructed on the elements of assault in the first, second, or third degree. And the jury was not informed that one cannot be guilty of felony terroristic threats for threatening to commit a domestic assault. Thus, we conclude that the error was plain and the second prong of *Griller* was met.

## 3. The erroneous instruction affected appellant's substantial rights.

■ Appellant contends that because of the deficient jury instruction, the jury convicted him of terroristic threats without determining whether he threatened T.S. with at least a third-degree assault, as required by Minn.Stat. § 609.713, subd. 1, and § 609.1095, subd. 1(d). We do not lightly reject the state's response that appellant has failed to meet his heavy burden

---

3. This court, in an unpublished decision, stated that "including any assault in the definition of a 'violent crime' [for a terroristic threats jury instruction] was an obvious error, because Minn.Stat. § 609.1095, subd. 1(d), specifically limits that definition to assault in the first, second, or third degrees." *State v. Boyd*, No. C2–02–624, 2003 WL 21061243, at

*6 (Minn.App. May 13, 2003). *Boyd* nonetheless affirmed the terroristic threat conviction, concluding that the third prong of *Griller* was not met because appellant had also been convicted of second-degree assault. Such is not the record in the case now before us and *Boyd*, in addition to being non-precedential, is factually distinct from this case.

to show prejudice because there was no factual basis for the jury to find appellant threatened only a misdemeanor assault, and no reasonable likelihood the jury would have so determined. We are also aware that an appellate court should exercise caution to avoid the possibility that an accused may inappropriately obtain two chances of acquittal by failing to be candid with the district court at the time instructions are being prepared and yet preserve the right to claim prejudicial plain error requiring a new trial. But we have no indication in this case of an attempt by appellant to receive "two bites of the apple."

▮▮▮ An appellate court, with its generous allocation of time in which to contemplate and decide issues, may devoutly wish that all parties involved at the trial level—prosecutor, defense attorney, and judge—were ever-errorless, despite time pressures, in assuring that specific and adequate instructions are given to a jury. In the absence of such specificity and adequacy, we are required to determine whether prejudice affecting the outcome of the case has been demonstrated. *Griller,* 583 N.W.2d at 741. Plain error is prejudicial and warrants a new trial if there is a "reasonable likelihood that the giving of the instruction in question would have had a significant effect on the verdict of the jury." *Id.* (citation omitted). "A jury instruction given in error is harmless only if it can be said that, beyond a reasonable doubt, the error had no significant impact on the verdict rendered." *State v. Mahkuk,* 736 N.W.2d 675, 683 (Minn.2007) (quotation omitted). The supreme court has consistently held that when an erroneous jury instruction eliminates a required element of the crime, the error is not harmless beyond a reasonable doubt. *Id.*

▮▮▮ We conclude that the third prong of *Griller* has been met and that remand for a new trial is required. To convict a defendant on a charge of felony terroristic threats, a jury must find that the defendant threatened a specific predicate crime of violence, as listed in Minn.Stat. § 609.1095. And the jury must be informed of the elements of that essential predicate offense. *Cf. State v. Charles,* 634 N.W.2d 425, 430 (Minn.App.2001) (concluding that where second-degree felony murder is charged and the predicate felony is assault, although CRIMJIG 13.09 does not mandate an instruction on intent, it is necessary to prove that the defendant intended to commit an assault because intent is an essential element of the definition of assault).

Here, the jury was never informed of the elements of first-, second-, or third-degree assault, but was instructed on the elements of domestic assault. And for purposes of the terroristic threats charge, the jury heard only that "assault is a crime of violence." It is possible that the jury may have interpreted the phrase "assault is a crime of violence" to include all levels of assault. If properly instructed, the jury may well have found that appellant's threats did rise to the level of a crime of violence (at least third-degree assault), but they may also have found that those threats rose only to the level of a misdemeanor domestic assault. We cannot conclude beyond a reasonable doubt that the error had no significant impact on the verdict. And a properly instructed jury must be given the opportunity to decide.

### 4. A reversal is necessary to ensure fairness and the integrity of the judicial proceedings.

▮▮▮ In the interest of thoroughly analyzing the need for a new trial, we address whether the error present here seriously affects the fairness and the integrity of the judicial proceedings. *Griller,* 583 N.W.2d

at 740 (citation omitted). The state argues that fairness and integrity have not been negatively affected and that reversal would foster abuse of the judicial system. The state contends that appellant would unfairly obtain two chances for acquittal because: (1) by not objecting at trial, he still had an opportunity for acquittal, and (2) in a postconviction proceeding, appellant could argue for a new trial and a second chance for acquittal. These are strong arguments and not easily rejected. Appellant counters that allowing his felony conviction to stand, where the "true nature of [his] threat is at best unclear," is inconsistent with fundamental notions of fairness and can only undermine public confidence in Minnesota's judicial proceedings.

Appellant makes the more convincing argument. We conclude that our decision that the state presented sufficient evidence on the charged elements of terroristic threats cannot overcome our concern that the jury was not given the opportunity to consider the critical question of whether appellant's statements satisfied the definition of a "crime of violence," as required by the terroristic threats statute, or whether they did not. In sum, the principles of fairness and judicial integrity require that we reverse and remand for a new trial.

## DECISION

In accordance with the plain language of the terroristic threats statute, section 609.713, subdivision 1, and the definition of "violent crime" as stated in section 609.1095, subdivision 1(d), the jury must be instructed that in order to convict on such a charge, the jury must find that the defendant made threats to commit a crime of assault in the first, second, or third degree. Our determination that the evidence was sufficient to convict appellant of terroristic threats does not overcome the need for a new trial in which the jury receives proper instruction.

**Reversed and remanded.**