*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-1298**

State of Minnesota,
Respondent,

vs.

Garry Brad Hendrickson, Jr.,
Appellant.

**Filed April 6, 2015**
**Affirmed**
**Rodenberg, Judge**

St. Louis County District Court
File No. 69DU-CR-13-1911

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark S. Rubin, St. Louis County Attorney, Christopher J. Pinkert, Assistant County Attorney, Duluth, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara L. Martin, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Rodenberg, Presiding Judge; Cleary, Chief Judge; and

Chutich, Judge.

UNPUBLISHED OPINION

**RODENBERG**, Judge

Appellant Garry Brad Hendrickson, Jr. challenges his conviction for terroristic threats, arguing that the evidence is insufficient to prove the requisite intent under the statute. We affirm.

**FACTS**

Appellant Garry Brad Hendrickson, Jr. has two children with J.H. and two children with N.W. On October 28, 2012, J.H. was living with N.W. Neither woman was then romantically involved with appellant. In the late afternoon on October 28, appellant had visitation with his children.[1] During the visit, he asked the children, "[w]hat's going on [at the residence of J.H. and N.W.?]," to which one of his children responded that J.H. had "some guy over there."

At some point after learning this, appellant returned the children to N.W.'s home and an argument arose between appellant and the two adult women. The accounts of the dispute vary considerably, but it is undisputed that appellant made statements to N.W. that she interpreted as threatening. N.W. called 911. Officers were dispatched to N.W.'s residence and, after investigation, appellant was charged with felony terroristic threats with intent to terrorize or in reckless disregard of the risk of causing terror, in violation of

---

[1] The record is not clear whether appellant had four of his children or just two of them.

Minn. Stat. § 609.713, subd. 1 (2012), and misdemeanor domestic assault in the fifth degree in violation of Minn. Stat. § 609.2242, subd. 1(1) (2012).[2]

The state's theory of the case was that, in a phone conversation with N.W. as appellant drove away from the residence, he told N.W. to "call the sheriff. I'm coming to take you off this earth," thereby intentionally terrorizing N.W. or recklessly disregarding the risk of causing terror.

Appellant waived his right to a jury trial and the case was tried to the court. At trial, N.W. testified that she had known appellant since 2004 and that, while they had some difficulties and disputes, she had "never seen" appellant as angry as he was on October 28. N.W. testified that appellant stated that he was "coming to get" her, that he was "coming to take [her] off this earth," and that he was going to burn down her house.[3] N.W. testified that she was scared and that appellant had "never gone that deep into a threat before with me to where he says, 'Call the sheriff'" and that she was concerned that he was going to follow through with the threat.

For his part, appellant denied telling N.W. that he would burn her house down, but he remembered telling her to burn in hell. He admitted being "angry" and "upset" and that during the conversation he broke his phone and was so angry that he intentionally crashed his car into a "wishing well," stating, "I was pissed off and instead of taking it out on somebody else, I took it out on my own s***[.]"

---

[2] The district court found appellant not guilty of misdemeanor domestic assault, and that charge is not before us on appeal.

[3] N.W. agreed that appellant "told me he was going to burn down my house many times in the past years."

J.H. testified for the defense. By the time of the trial, J.H. and appellant had reconciled and were living together with their two children. J.H. testified that, on October 28, appellant had dropped off the children at N.W.'s residence and that she and N.W. refused to answer the door when appellant knocked because they were "just being mean, I guess, being vindictive in a way." J.H. testified that after appellant left she talked to him on her phone and when he called back N.W. "thought it would be fun to intervene and put her two cents into it, so she grabbed [the phone] out of my hand." J.H. testified that she could not hear what appellant was saying and that she did not hear appellant threaten N.W. J.H. testified that N.W. "was telling [appellant] to go kill himself" and that she was "very vindictive."

The district court found appellant guilty of felony terroristic threats and not guilty of misdemeanor domestic assault. The district court sentenced appellant to 15 months in prison, staying execution of the sentence for three years on multiple conditions of probation. This appeal followed.

**D E C I S I O N**

Appellant argues that his conduct and statements on October 28 amounted to mere "transitory anger" and that he neither intended to terrorize N.W. nor recklessly disregarded the risk of causing such terror. In considering a claim of insufficient evidence, we review whether "the facts in the record and any legitimate inferences drawn from them" could lead a jury to "reasonably conclude that the defendant was guilty of the charged offense beyond a reasonable doubt." *State v. Whitley*, 682 N.W.2d 691, 694

4

(Minn. App. 2004). This standard of review also applies when "the defendant has waived a jury trial and the district court is the factfinder." *Id.* at 694-95.

The state was required to prove that appellant directly or indirectly threatened to commit a crime of violence either with the intent to terrorize N.W. or in reckless disregard of "the risk of causing such terror." Minn. Stat. § 609.713, subd. 1. Intent "is a subjective state of mind usually established only by reasonable inference from surrounding circumstances," such as a victim's reaction to a statement. *State v. Schweppe*, 306 Minn. 395, 401, 237 N.W.2d 609, 614 (1975). A victim's reaction to a defendant's alleged threats "is 'circumstantial evidence relevant to the element of intent of the defendant in making the threat.'" *State v. Fischer*, 354 N.W.2d 29, 33 (Minn. App. 1984) (*citing Schweppe*, 306 Minn. at 401, 237 N.W.2d at 614), *review denied* (Minn. Dec. 20, 1984).

We employ heightened scrutiny in reviewing the sufficiency of the evidence when the state's case depends solely or primarily on circumstantial evidence. *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010); *State v. Sam*, ___ N.W.2d ___, ___, 2015 WL 648220, at *6 (Minn. App. Feb. 17, 2015). Here, appellant's state of mind is proven solely by circumstantial evidence, as appellant made no admissions of either intent to terrorize N.W. or of acting in reckless disregard of the risk of terrorizing her. The district court found that appellant "directly threatened a crime of violence against [N.W.] with the purpose of terrorizing her."

In applying the circumstantial evidence standard, we employ a two-step analysis to (1) identify the circumstances proved and (2) determine whether those circumstances "are

consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *State v. Silvernail*, 831 N.W.2d 594, 598-99 (Minn. 2013) (quotation omitted). We view evidence in the light most favorable to the verdict, *Whitley*, 682 N.W.2d at 694, and "[t]his is especially true when resolution of the matter depends mainly on conflicting testimony because weighing the credibility of witnesses is the exclusive function of the [factfinder]," *State v. Jorgenson*, 758 N.W.2d 316, 321 (Minn. App. 2008).

"A threat is a declaration of an intention to injure another or his property by some unlawful act." *Schweppe*, 306 Minn. at 399, 237 N.W.2d at 613. To determine whether words or phrases are "harmless or threatening," we consider "the context in which they are used." *Id.* A statement is a threat when "in its context [the statement] would have a reasonable tendency to create apprehension that its originator will act according to its tenor." *Id.* (quotation and quotation marks omitted). "Purpose means aim, objective or intention" and terrorize means "to cause extreme fear by use of violence or threats." *Id.* at 400, 237 N.W.2d at 614.

We begin our analysis of the sufficiency of the circumstantial evidence by determining the circumstances proved. *Silvernail*, 831 N.W.2d at 598. The district court issued written findings accompanying its verdicts, which outline the circumstances it considered proved.[4]

---

[4] Appellant also argues that the district court "did not make findings of fact" related to any of the allegations other than appellant's statement to take N.W. off the face of the earth and accordingly those statements should not be considered circumstances proved. However, in its first factual finding, the district court describes the testimony and exhibits presented at trial and that "[t]he Court relies on all of this evidence in making its factual findings." We determine the circumstances proved based on the entire record, and we are

6

Considered in the light most favorable to the verdict, the record proves that, on October 28, 2012, appellant learned that J.H., who was then living with N.W., had a man at the house. Appellant became angry and drove the children back to N.W.'s house. He knocked on the door a number of times, eventually leaving the children on the doorstep and returning to his car. Eventually, J.H. opened the door and let the children inside the house. Appellant left in his car and began repeatedly calling J.H., who let her phone ring without answering and then hung up on appellant at least once. At some point, N.W. picked up J.H.'s phone and had "a very unpleasant conversation" with appellant. Appellant told N.W. to "call the sheriff. I'm coming to take you off this earth," and he threatened to burn down her house. During the conversation, appellant was so upset that he broke his phone and intentionally crashed his car into a wishing well. After appellant's threat, N.W. called 911 and stated that appellant "said that he is coming to kill me right now, so I'm supposed to call the sheriff." N.W. said that, despite their history of arguments and disputes, she had never heard appellant tell her to call the sheriff before.

When viewed as a whole, the circumstances proved are consistent with appellant's guilt. Appellant and N.W. had a conversation in which each said unpleasant things to the other. Appellant told N.W. that he would burn down her house, that he was coming to "take [her] off this earth," and that she should call the sheriff. Appellant's threats seemed to N.W. as more genuine than those he had made on other occasions and she had "never

_____

not limited to considering only those circumstances specifically identified in the district court's findings of fact. *See, e.g.*, *State v. Flowers*, 788 N.W.2d 120, 133 (Minn. 2010) (stating that we review the entire record to determine whether the evidence permits the district court to reasonably conclude that a defendant is guilty of the crime charged).

seen him that angry." The evidence easily supports a conclusion that appellant intentionally terrorized N.W. by his threats or that he at least recklessly disregarded the risk of causing terror in N.W. *See* Minn. Stat. § 609.713, subd. 1 (stating that direct or indirect threats of violence "with purpose to terrorize . . . or in a reckless disregard of the risk of causing such terror" constitute terroristic threats). His words and actions clearly conveyed a threat of violence against N.W., specifically to kill her.

We next assess whether there are any other "reasonable, rational inferences that are inconsistent with guilt." *State v. Hanson*, 800 N.W.2d 618, 622 (Minn. 2011) (quotation omitted). Appellant argues that it is reasonable and rational to infer from the evidence that he was merely expressing transitory anger in the heat of the moment and that he did not intend to follow through on his threats. Appellant argues that terroristic threats must include some "words or actions" suggesting a defendant's "intent to make good on the threats" and cites several cases to support this argument.

In *State v. Begbie*, we concluded that appellant's statements were not expressing transitory anger because appellant had been planning attacks on the victims months before the telephone conversation in which the threats were made. 415 N.W.2d 103, 105 (Minn. App. 1987), *review denied* (Minn. Jan. 20, 1988). While *Begbie* demonstrates actions that tend to prove a threat was made with purpose to terrorize, there is nothing in the case that supports a rule that, in the absence of specific actions in furtherance of a threat, there is insufficient evidence to support a conviction for terroristic threats. *See State v. Marchand*, 410 N.W.2d 912, 915 (Minn. App. 1987) (concluding that the victim's reaction is circumstantial evidence relevant to the element of intent and that

8

appellant had intended for the victim to be afraid of touching his car again), *review denied* (Minn. Oct. 21, 1987).

In *State v. Dick*, the defendant tried to bite and kick the officers he threatened. 638 N.W.2d 486, 492 (Minn. App 2002).  In *Dick*, the evidence of these actions was used to support the conclusion that the defendant was "rageful" and that he had the requisite intent, despite being intoxicated, to make terroristic threats.  *Id.*  Nothing in *Dick* establishes a requirement that overt actions taken by the defendant are required to conclude that the defendant intended to terrorize or recklessly disregarded the risk of causing terror.

Additionally, in *State v. Fischer*, the defendant made numerous phone calls, over a six-hour period, in which he threatened to kill multiple people.  354 N.W.2d 29, 31 (Minn. App. 1984).  While making these threats, the defendant was also shooting a firearm.  *Id.*  While the defendant tried to use the evidence of discharging his firearm as proof that he was "blowing off a little steam," we held that this contention was "unsupported, as there are other methods of blowing off steam besides discharging firearms while threatening to kill people."  *Id.* at 34.  Again, nothing in *Fisher* supports appellant's argument that a conviction for terroristic threats requires an overt act in furtherance of the threat.

The circumstances proved in this case do not reasonably suggest that appellant's actions were mere transitory anger.  Here, according to appellant, he used other methods, such as breaking his own property, to blow off steam.  But in addition to breaking his own property, appellant continued to call J.H. and argue with N.W. by phone, making

threats to kill N.W. and burn her house down. Further, the district court found that appellant's "version of events is simply not credible," and we defer to the district court's credibility determinations. *Jorgenson*, 758 N.W.2d at 321; *see also* Minn. R. Civ. P. 52.01.

The district court examined the context of the threats and concluded that "it is overwhelmingly likely" that the threat was real and that N.W.'s fear was imminent. The district court was best situated to evaluate the context, meaning, and intention of appellant's words. *See Jorgenson*, 758 N.W.2d at 321 (explaining that we must view the evidence in the light most favorable to the verdict). The district court specifically found that "[t]he Court sees no reason, however, why [appellant] should not be taken at his word. Someone who gets so angry that he purposely destroys his own property may be capable of inflicting violence on others as well."

In viewing the evidence in the light most favorable to the verdict, and giving due regard to the district court's credibility determinations, there is no rational inference from the evidence of record inconsistent with guilt. The circumstances proved support only the district court's verdict.

**Affirmed.**