*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0887**

Ravy Nov, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed February 13, 2017
Affirmed
Halbrooks, Judge**

Dakota County District Court
File No. 19HA-CR-13-1972

Cathryn Middlebrook, Chief Appellate Public Defender, Andrea Barts, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Phillip D. Prokopowicz, Chief Deputy, Hastings, Minnesota (for respondent)

Considered and decided by Rodenberg, Presiding Judge; Halbrooks, Judge; and Kirk, Judge.

## UNPUBLISHED OPINION

**HALBROOKS**, Judge

Appellant challenges his convictions of terroristic threats, domestic assault, and two counts of first-degree burglary, arguing that the state presented insufficient evidence

that he (1) threatened a crime of violence and (2) had the intent to terrorize the victim and cause her fear of immediate bodily harm. We affirm.

## FACTS

In June 2013, appellant Ravy Nov and C.C. ended their two-year romantic relationship. Nov reacted by sending threatening text messages to C.C. On June 24, 2013, Nov asked C.C. to allow him to retrieve his belongings from her apartment. C.C. agreed to meet Nov at her apartment; upon her arrival, C.C. noticed that her bedroom window was open and her bedroom was in disarray. Nov arrived shortly thereafter and they had an argument, during which C.C. repeatedly told Nov to leave. Nov told C.C. that he had burned her citizenship papers and her car title. Nov took a utility knife from his pocket and placed it on the table next to the bed where he was sitting and asked C.C. to sit next to him. C.C. refused, left, and called the police from a nearby grocery store.

The police met and spoke with C.C. at the grocery store and then drove to her apartment. Nov was still in C.C.'s apartment. He did not answer his cell phone when the police called him but did answer C.C.'s cell phone, which he had taken from C.C. A police officer instructed Nov to meet him in the hallway. Nov complied and was taken into custody.

Nov was charged with first-degree burglary (occupied dwelling) in violation of Minn. Stat. § 609.582, subd. 1(a) (2012), first-degree burglary (possession of a dangerous weapon) in violation of Minn. Stat. § 609.582, subd. 1(b) (2012), felony terroristic threats in violation of Minn. Stat. § 609.713, subd. 1 (2012), and misdemeanor domestic assault in violation of Minn. Stat. § 609.2242, subd. 1(1) (2012). He waived his right to a jury

2

trial, and a bench trial was held.  The district court found Nov guilty of all four offenses.

He was sentenced to 41 months on the convictions of first-degree burglary (possession of

a dangerous weapon) and terroristic threats.

Nov petitioned for postconviction relief, seeking to vacate his convictions on the

ground of insufficient evidence.  The same district court judge who presided at Nov's

trial also presided over Nov's postconviction proceedings.  The postconviction court

denied Nov's petition, finding that there was sufficient evidence to prove beyond a

reasonable doubt that Nov committed the offenses.  This appeal follows.

**D E C I S I O N**

"When reviewing a postconviction court's decision, we examine only whether the

postconviction court's findings are supported by sufficient evidence.  We will reverse a

decision of [the] postconviction court only if that court abused its discretion." *Lussier v.

State*, 821 N.W.2d 581, 588 (Minn. 2012) (alteration in original) (quotation and citation

omitted).  "A postconviction court abuses its discretion when its decision is based on an

erroneous view of the law or is against logic and the facts in the record." *Riley v. State*,

819 N.W.2d 162, 167 (Minn. 2012) (quotation omitted).  "When considering a claim of

insufficient evidence, our review is limited to a painstaking analysis of the record to

determine whether the evidence, when viewed in the light most favorable to the

conviction, was sufficient to permit the [fact-finder] to reach the verdict which [it] did."

*State v. Ortega*, 813 N.W.2d 86, 100 (Minn. 2012) (quotation omitted).  We assume that

the fact-finder believed the state's witnesses and disbelieved any contrary evidence. *Id.*

## I. Terroristic Threats

To prove the crime of terroristic threats, the state had to establish that Nov "threaten[ed], directly or indirectly, to commit any crime of violence with purpose to terrorize another." Minn. Stat. § 609.713, subd. 1 (2012). Nov contends that the state failed to establish that he threatened to commit a crime of violence and that he possessed the requisite intent.

### A. Predicate Offense

Nov argues that the state failed to provide sufficient evidence that he threatened to commit a crime of violence. Conduct constitutes a threat when, in its context, it "would have a reasonable tendency to create apprehension that its originator will act according to its tenor." *State v. Murphy*, 545 N.W.2d 909, 915 (Minn. 1996) (quotation omitted). First-degree assault is a crime of violence. Minn. Stat. § 609.1095, subd. 1(d) (2012). A person commits first-degree assault when he "assaults another and inflicts great bodily harm." Minn. Stat. § 609.221, subd. 1 (2012). "Assault" is defined as "(1) an act done with intent to cause fear in another of immediate bodily harm or death; or (2) the intentional infliction of or attempt to inflict bodily harm upon another." Minn. Stat. § 609.02, subd. 10 (2012).

Here, the postconviction court upheld Nov's terroristic-threats conviction because it determined that Nov threatened to commit first-degree assault. In doing so, it relied on the following facts: Nov and C.C.'s relationship history, Nov told C.C. that he would make her and her parents suffer, Nov and C.C. argued on the night in question, Nov looked angry, and C.C. was afraid when Nov displayed the knife and asked her to sit next

4

to him. Nov also removed the SIM card from C.C.'s phone before she left the apartment to call the police. At trial, the district court determined that the knife was capable of causing great bodily harm and that Nov's acts of placing the knife next to C.C.'s bed and asking her to sit next to him had no purpose other than to terrorize her. Viewing the evidence in the light most favorable to the conviction, the record is sufficient to support the postconviction court's findings that Nov threatened to commit a first-degree assault because Nov's actions would have a reasonable tendency to create apprehension in C.C. that he would harm her with the knife. We conclude that the postconviction court did not abuse its discretion in finding that the state presented sufficient evidence that Nov committed the predicate offense.

Citing *State v. Jorgenson*, Nov makes the additional argument that a fact-finder must find that the defendant threatened a *specific* predicate crime of violence and must be informed of the elements of that predicate crime. *See* 758 N.W.2d 316, 325 (Minn. App. 2008), *review denied* (Minn. Feb. 17, 2009). In *Jorgenson*, the jury was asked to determine whether Jorgenson committed the crime of terroristic threats and was instructed that "assault is a crime of violence." *Id.* at 323. The jury was never instructed on the elements of first-, second-, or third-degree assault, but it was instructed on the elements of domestic assault, which is not a predicate crime of violence. *Id.* at 325. The jury found Jorgenson guilty of terroristic threats. *Id.* at 320. On appeal, we concluded that the jury may have incorrectly understood domestic assault to be a predicate crime of violence, which may have had a significant impact on the verdict. *Id.* at 325. We reversed and remanded, requiring the jury to "find that the defendant threatened a specific

predicate crime of violence" and to "be informed of the elements of that essential predicate offense." *Id.* at 325-26.

But Nov had a bench trial, not a jury trial. *Jorgenson* stands for the principle that a jury must find that a defendant threatened a specific predicate crime of violence. *Id.* at 325. But there is no requirement for a judge to make the same finding. *Id.* "The distinction between a jury trial and a bench trial is important." *State v. Burrell*, 772 N.W.2d 459, 467 (Minn. 2009). A bench trial does not present the same risk of the fact-finder misapplying the evidence as a jury trial and it does not require jury instructions, so *Jorgenson* does not apply. *See id.* (stating that there is less risk that a district court judge "would use the evidence for an improper purpose or have his sense of reason overcome by emotion"). Further, the district court made a finding that Nov's utility knife was capable of inflicting great bodily harm, which is an element of first-degree assault. Therefore, it is clear that the district court found first-degree assault to be the applicable predicate crime of violence.

## B. Intent

Nov also contends there was insufficient evidence that he possessed the requisite intent to terrorize C.C. The state satisfies the intent element of terroristic threats if it proves that the defendant acted "with purpose to terrorize another." Minn. Stat. § 609.713, subd. 1. In this context, purpose "means aim, objective, or intention," and "[t]errorize means to cause extreme fear by use of violence or threats." *State v. Schweppe*, 306 Minn. 395, 400, 237 N.W.2d 609, 614 (1975). A victim's reaction to a threat is circumstantial evidence of intent. *Id.* at 401, 237 N.W.2d at 614.

Intent is generally established by circumstantial evidence. *State v. Cooper*, 561 N.W.2d 175, 179 (Minn. 1997). When the state proves an element of a charge with only circumstantial evidence, it "merits stricter scrutiny than convictions based in part on direct evidence." *State v. Jones*, 516 N.W.2d 545, 549 (Minn. 1994). The circumstantial evidence must form a complete chain that, in view of the evidence as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt. *Id.* In applying the circumstantial-evidence standard, this court uses a two-step analysis. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). "The first step is to identify the circumstances proved. In identifying the circumstances proved, we defer to the jury's acceptance of the proof of these circumstances and rejection of evidence in the record that conflicted with the circumstances proved by the State." *Id.* at 598-99 (quotation and citation omitted). This court "construe[s] conflicting evidence in the light most favorable to the verdict and assume[s] that the jury believed the State's witnesses and disbelieved the defense witnesses." *Id.* at 599 (quotation omitted). "The second step is to determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypotheses except that of guilt." *Id.* (quotation omitted).

In addition to the findings that the district court made at trial to support the determination of a predicate offense, the district court also found that Nov's threats caused C.C. to stay with a friend, that C.C. found her bedroom window open and her bedroom in disarray when she and a friend returned to her apartment to allow Nov to retrieve his belongings, that Nov admitted that he attempted to get into the apartment

7

through the window but was unsuccessful, that Nov told C.C. that he burned her citizenship papers and car title, and that Nov refused to leave the apartment after C.C. asked him to do so multiple times. We conclude that these facts, considered in totality, are inconsistent with any rational hypothesis other than guilt, so the postconviction court did not abuse its discretion in finding that the state provided sufficient evidence that Nov possessed the intent necessary to commit terroristic threats.

## II. Burglary

Nov contends that both of his first-degree-burglary convictions should be reversed on the sole basis that the state failed to provide sufficient evidence that Nov committed the predicate crime of terroristic threats while in C.C.'s apartment. Burglary requires proof that a defendant "enter[ed] a building without consent and commit[ted] a crime while in the building." Minn. Stat. § 609.582, subd. 1 (2012).

Because we affirm the postconviction court's determination that Nov committed terroristic threats, we conclude that it did not abuse its discretion in affirming Nov's first-degree-burglary convictions.

## III. Domestic Assault

Nov also argues that the state failed to prove that he possessed the intent necessary to convict him of domestic assault. In order to prove the intent element of domestic assault, the state must establish that the defendant acted "with intent to cause fear in another of immediate bodily harm." Minn. Stat. § 609.2242, subd. 1(1). "'With intent to' . . . means that the actor either has a purpose to do the thing or cause the result

specified or believes that the act, if successful, will cause that result." Minn. Stat. § 609.02, subd. 9(4) (2012).

Because the postconviction court found that the intent elements of domestic assault and terroristic threats are similar, it did not independently analyze whether the state proved that Nov possessed the intent necessary to convict him of domestic assault. Instead, it concluded that the state presented sufficient evidence of intent based on its determination that Nov possessed the intent required to commit terroristic threats.

Utilizing the same analysis that we applied in addressing whether the postconviction court abused its discretion in determining that Nov possessed the requisite intent to commit terroristic threats, we conclude that the totality of the facts are inconsistent with any rational hypothesis other than guilt on Nov's conviction of misdemeanor domestic assault. The postconviction court properly exercised its discretion in finding that the state provided sufficient evidence that Nov possessed the intent necessary to commit domestic assault.

**Affirmed.**