*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1863**

State of Minnesota,
Respondent,

vs.

Timothy John Bakken,
Appellant.

**Filed November 23, 2015
Affirmed
Schellhas, Judge**

Polk County District Court
File No. 60-CR-13-1846

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Greg Widseth, Polk County Attorney, Scott, A Buhler, Assistant County Attorney, Crookston, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Reilly, Presiding Judge; Schellhas, Judge; and

Stoneburner, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Appellant challenges his conviction of terroristic threats, arguing that the evidence presented at the jury trial was insufficient to prove his guilt and that the jury instruction on the elements of terroristic threats was plain error that affected his substantial rights. We affirm.

**FACTS**

Respondent State of Minnesota charged appellant Timothy John Bakken with terroristic threats (reckless disregard of risk), domestic assault, and fourth-degree criminal damage to property following the events of two days in September 2013. At Bakken's jury trial, his mother R.B. testified that as she and Bakken traveled home from their mutual place of employment, Bakken became angry and began to yell at R.B. and call her names. He continued to do so when they arrived at their shared residence, and he began drinking alcoholic beverages. As the night progressed, Bakken threw an empty can down some stairs and then kicked it at R.B.; "pulled up a chair real close to [R.B.'s] face and just kept calling [her] names"; and repeatedly opened a glass door and "slamm[ed it closed] as hard as he could," to the point that R.B. believed that the door would break. He also took a remote control and cell phone away from R.B., hurting her wrists in the process. R.B. felt "[s]cared" and "[d]esperate" and contacted another son for help. That son came to the residence and called law enforcement. Law enforcement came to the residence, spoke with Bakken and R.B., and left at R.B.'s insistence because she did not want to leave the residence and Bakken had gone to sleep and would "be okay now." But

Bakken soon awoke and resumed yelling and calling R.B. names. Law enforcement returned to the residence and escorted R.B. to another son's home, where she stayed for the night.

The following morning when R.B. returned to her residence, Bakken again began drinking alcoholic beverages, yelling, and calling R.B. names. At some point that day, he pushed R.B. into a corner of the kitchen, grabbed her shirt, and "kept shaking [her] back and forth and telling [her that] he was going to kill [her]." He yelled that she "wasn't getting away with . . . [c]alling the police on him." R.B. "was scared" and "wanted to get away." She testified that she was "sure he was not going to kill [her]" because he was her son, but she "was scared he might hit [her]." Bakken left the room after R.B. hit him on the back of the head with an ice-cube tray. He returned a few minutes later, grabbed R.B.'s shirt, pushed her into a corner, shook her again, and stated, "I changed my mind. I'm not going to kill you. You're going to live to regret this." Bakken then repeatedly yelled "cop caller" directly into R.B.'s ear. He also picked up a kitchen chair, slammed it up and down on the floor, and banged it on other furniture. He then swept all of the contents of the kitchen table onto the floor. R.B. eventually left the home because she "was scared" and "knew [she] had to get out of there." She reported the events to law enforcement, who arrested Bakken.

The jury found Bakken guilty of the charged offenses. This appeal follows.

# D E C I S I O N

## I.

Bakken first argues that the evidence was insufficient to support his conviction of terroristic threats (reckless disregard of risk). A person commits the crime of terroristic threats if he "threatens, directly or indirectly, to commit any crime of violence with purpose to terrorize another . . . or in a reckless disregard of the risk of causing such terror." Minn. Stat. § 609.713, subd. 1 (2012).

Assessing the sufficiency of the evidence involves "a painstaking review of the record to determine whether the evidence and reasonable inferences drawn therefrom, viewed in a light most favorable to the verdict, were sufficient to allow the jury to reach its verdict." *State v. Vang*, 847 N.W.2d 248, 258 (Minn. 2014) (quotation omitted). The appellate court must "assume that the [jury] believed the state's witnesses and disbelieved any contrary evidence." *Gulbertson v. State*, 843 N.W.2d 240, 245 (Minn. 2014) (quotation omitted). A guilty verdict will not be reversed "if, giving due regard to the presumption of innocence and to the prosecution's burden of proving guilt beyond a reasonable doubt, the jury could reasonably have found the defendant guilty of the charged offense." *Vang*, 847 N.W.2d at 258 (quotation omitted).

*A threat to commit a crime of violence*

"A threat is a declaration of an intention to injure another or his property by some unlawful act." *State v. Schweppe*, 306 Minn. 395, 399, 237 N.W.2d 609, 613 (1975). "[T]he question of whether a given statement is a threat turns on whether the communication in its context would have a reasonable tendency to create apprehension

4

that its originator will act according to its tenor." *Id.* (quotation omitted). All of Minnesota's homicide crimes qualify as crimes of violence. *See* Minn. Stat. § 609.713, subd. 1 (referring to Minn. Stat. § 609.1095, subd. 1(d) (2012), for list of crimes qualifying as crimes of violence); Minn. Stat. § 609.1095, subd. 1(d) (listing all of Minnesota's murder, manslaughter, and criminal-vehicular-homicide statutes). A defendant's statement that he is going to kill a person may qualify as a threat to commit a crime of violence. *See, e.g.*, *Schweppe*, 306 Minn. at 400, 237 N.W.2d at 613–14 (stating that "there was ample evidence to support the conclusion that defendant . . . threatened to kill" two people and that "[o]bviously, such threats involved a crime of violence prohibited by our homicide statutes" (quotation omitted)); *State v. Dick*, 638 N.W.2d 486, 492 (Minn. App. 2002) (concluding that evidence was sufficient to support terroristic-threats conviction where defendant threatened to kill police officers), *review denied* (Minn. Apr. 16, 2002).

R.B. testified that, when Bakken cornered her in the kitchen, grabbed her shirt, and shook her, he told her that "he was going to kill [her]." Bakken argues that this statement was not a threat, but only an expression of "transitory anger" and "fleeting frustration." We have stated that "[t]he terroristic-threats statute is not intended to authorize grave sanctions against the kind of verbal threat which expresses transitory anger which lacks the intent to terrorize." *State v. Smith*, 825 N.W.2d 131, 137 (Minn. App. 2012) (quotation omitted), *review denied* (Minn. Mar. 19, 2013). An argument that a statement qualifies as an expression of transitory anger, rather than a terroristic threat, is a challenge to the sufficiency of the evidence. *See, e.g.*, *id.* (concluding that evidence was sufficient

5

to support defendant's terroristic threats conviction because "the evidence does not support the theory that [defendant] was expressing transitory anger without any purpose to terrorize"); *State v. Jones*, 451 N.W.2d 55, 63 (Minn. App. 1990) (concluding that, based on evidence presented at trial, "it would be possible for a reasonable jury to conclude that [defendant] was not expressing 'transitory anger'"), *review denied* (Minn. Feb. 21, 1990); *State v. Marchand*, 410 N.W.2d 912, 915 (Minn. App. 1987) ("[T]here is evidence that [defendant] acted with intent and not merely out of transitory anger. Viewed in the light most favorable to support the jury's finding of guilt, we conclude that this evidence of intent is sufficient to permit the jury to reach that conclusion."), *review denied* (Minn. Oct. 21, 1987).

Here, the evidence supports a conclusion that Bakken's anger was not merely "transitory" or "fleeting." Bakken's yelling, name calling, destruction of the home, and threats toward R.B. took place over the course of two days and caused law enforcement to be called three times. *Cf. State v. Fischer*, 354 N.W.2d 29, 34 (Minn. App. 1984) (responding to defendant's transitory-anger argument by stating that "[i]t is a mockery to suggest [defendant's] actions were spur-of-the-moment threats" when those actions continued for almost six hours), *review denied* (Minn. Dec. 20, 1984). On the second day, Bakken remained angry about law enforcement being called the day before, resulting in him cornering R.B., grabbing her shirt, shaking her back and forth, and telling her that "he was going to kill [her]" and that she "wasn't getting away with . . . [c]alling the police on him." R.B.'s testimony provided sufficient evidence for the jury to find that Bakken threatened to commit a crime of violence.

*In reckless disregard of the risk of causing terror*

In the context of a terroristic-threats conviction, "[r]ecklessness requires deliberate action in disregard of a known, substantial risk." *State v. Bjergum*, 771 N.W.2d 53, 57 (Minn. App. 2009), *review denied* (Minn. Nov. 17, 2009). "[A] person who might lack a specific intent to threaten or terrorize may nevertheless utter an objectively threatening statement recklessly, committing a terroristic-threats crime. By acting without regard to a known, substantial risk, a person's threats, however intended, may violate the statute." *Id.* "Terrorize means to cause extreme fear by use of violence or threats." *Schweppe*, 306 Minn. at 400, 237 N.W.2d at 614.

Bakken's behavior on the first day resulted in law enforcement being called twice and R.B. leaving the home for the night. Bakken continued his behavior the following day, pushed R.B. into a corner, grabbed her shirt, shook her back and forth, told her that he was going to kill her, and yelled that she would not get away with calling law enforcement. Bakken points to R.B.'s testimony that she did not believe that he would kill her. But a victim's belief that a defendant will carry out a threat is not a necessary element of the crime of terroristic threats. *See id.* at 401, 237 N.W.2d at 614 (stating that "[t]he effect of a terroristic threat on the victim is not an essential element of the statutory offense"). R.B.'s testimony provided sufficient evidence for the jury to find that Bakken threatened her with a reckless disregard of the risk of causing her terror. The evidence presented at trial was sufficient to prove Bakken guilty of terroristic threats (reckless disregard of risk).

**II.**

Bakken also argues that the jury instruction on the elements of terroristic threats was erroneous and that the error affected his substantial rights. A conviction of terroristic threats requires that the defendant have "threaten[ed] . . . to commit any crime of violence." Minn. Stat. § 609.713, subd. 1. The district court instructed the jury that an element of the crime of terroristic threats is that "the defendant threatened, directly or indirectly, to commit a crime of violence." The court further instructed the jury that "in Minnesota, murder is a crime of violence." Bakken argues that the district court erred by failing to provide an instruction defining and providing the elements of a murder crime. He admits that he did not object to the jury instructions, but he contends that the instructions were plain error that affected his substantial rights.

"A defendant generally forfeits the right to contest jury instructions on appeal when the defendant fails to object at trial," but "[a]n exception to this general rule allows [an appellate court] to consider such a claim under plain-error review[.]" *State v. Davis*, 864 N.W.2d 171, 176 (Minn. 2015). The defendant "must establish that there was an error, the error was plain, and the error affected his substantial rights." *State v. Bustos*, 861 N.W.2d 655, 660 (Minn. 2015). If the appellate court determines that a plain error affected the defendant's substantial rights, the court "may correct the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Davis*, 864 N.W.2d at 176 (quotation omitted).

"An error is plain if it is clear or obvious; usually this means an error that violates or contradicts case law, a rule, or an applicable standard of conduct." *Bustos*, 861 N.W.2d

8

at 660–61 (quotation omitted). "When reviewing jury instructions for error, [an appellate court] review[s] the instructions in their entirety to determine whether they fairly and adequately explain the law." *State v. Moore*, 846 N.W.2d 83, 90 (Minn. 2014). While district courts are given "considerable latitude" in selecting the language of jury instructions, "[j]ury instructions that confuse, mislead, or materially misstate the law are erroneous." *Davis*, 864 N.W.2d at 176 (quotation omitted).

"[F]ailure to properly instruct the jury on all elements of the offense charged is plain error." *State v. Vance*, 734 N.W.2d 650, 658 (Minn. 2007), *overruled on other grounds by State v. Fleck*, 810 N.W.2d 303, 311 (Minn. 2012). We have stated that "[t]o convict a defendant on a charge of felony terroristic threats, a jury must find that the defendant threatened a specific predicate crime of violence" and that "the jury must be informed of the elements of that essential predicate offense." *State v. Jorgenson*, 758 N.W.2d 316, 325 (Minn. App. 2008), *review denied* (Minn. Feb. 17, 2009). And the jury instruction guide on the elements of the crime of terroristic threats provides for the insertion of the definition and elements of a specific crime of violence. *See* 10 *Minnesota Practice*, CRIMJIG 13.107 (Supp. 2012). We conclude that the failure to include the elements of a murder crime in the jury instructions was plain error.

But we also conclude that the failure to include those elements in the jury instructions did not affect Bakken's substantial rights. "In the context of jury instructions, [the supreme court has] held that an error affects substantial rights when there is a reasonable likelihood that a more accurate instruction would have changed the outcome in th[e] case." *State v. Gutierrez*, 667 N.W.2d 426, 434–35 (Minn. 2003) (quotation

9

omitted). R.B. testified that Bakken told her that he was going to kill her. Even if the jury had been instructed that causing the death of a human with intent and premeditation constitutes first-degree murder or that causing the death of a human with intent but without premeditation constitutes second-degree murder, the jury would undoubtedly have concluded that Bakken threatened to commit a crime of violence. *See* Minn. Stat. § 609.185(a)(1) (2012) (stating that "caus[ing] the death of a human being with premeditation and with intent to effect the death of the person or of another" is first-degree murder); Minn. Stat. § 609.19, subd. 1(1) (2012) (stating that "caus[ing] the death of a human being with intent to effect the death of that person or another, but without premeditation" is second-degree murder). Because there is no reasonable likelihood that an accurate instruction would have changed the jury's verdict, Bakken is not entitled to reversal of his conviction of terroristic threats.

**Affirmed.**