STATE OF MINNESOTA

IN SUPREME COURT

A13-1863

Hennepin County                                                                                          Wright, J.

State of Minnesota,

                              Respondent,

vs.                                                                                      Filed:  June 3, 2015
                                                                                      Office of Appellate Courts
Gregory Antoine Davis,

                              Appellant.


_____

Lori Swanson, Attorney General, Saint Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County Attorney, Minneapolis, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Richard Schmitz, Assistant Public Defender, Saint Paul, Minnesota, for appellant.

_____

S Y L L A B U S

1.      The district court erred when it incorrectly instructed the jury on the "intent to steal" element of burglary.  However, there is no reasonable likelihood that the error substantially affected the verdict.

1

2.    Although the district court erred by instructing the jury that it did not need to consider lesser offenses if it found appellant guilty of a more serious charge, the error was not plain.

3.    The district court did not abuse its discretion when it excluded alternative-perpetrator evidence because the evidence was irrelevant or hearsay, and, therefore, inadmissible.

4.    The district court did not err under Minn. R. Crim. P. 26.03 when it proceeded without appellant present during parts of his trial.

Affirmed.

O P I N I O N

WRIGHT, Justice.

Following a jury trial, appellant Gregory Antoine Davis was found guilty of unlawful possession of a firearm, Minn. Stat. § 624.713, subd. 1(2) (2014), and first-degree felony murder,[1] Minn. Stat. § 609.185(a)(3) (2014).  The district court adjudged Davis guilty of both offenses and sentenced him to life in prison with the possibility of release.  In this direct appeal, Davis argues that he is entitled to a new trial on any of the following four grounds: (1) the district court erroneously instructed the jury on an element of burglary, the predicate offense for the felony-murder charge; (2) the district

---

[1]    As has been our common practice, we use the term "first-degree felony murder" when we refer to the crime of "caus[ing] the death of a human being with intent to effect the death of the person or another, while committing or attempting to commit burglary" or other enumerated crimes.  Minn. Stat. § 609.185(a)(3) (2014); *see State v. Koskela*, 536 N.W.2d 625, 629 (Minn. 1995).

2

court erred in its jury instructions by suggesting the order in which the jury should consider the charges; (3) the district court abused its discretion by excluding certain reverse-*Spreigl* evidence;[2] and (4) the district court violated Minn. R. Crim. P. 26.03, subd. 1, when it proceeded with the trial in Davis's absence. Because Davis has not established that the district court committed reversible error, we affirm.

I.

Brianna Jones was shot to death on December 22, 2011, in the lower-level unit of a Minneapolis duplex that she shared with her boyfriend, D.M. Several other family members, including D.M.'s mother, A.M., lived with them. Davis was A.M.'s boyfriend. D.M. discovered Jones's body when he arrived home from work and saw her lying on the living-room floor, having been shot once in the left temple. Clothing, electronics, and luggage were strewn about the apartment. Jewelry and other items, including a gun that belonged to D.M., were missing.

Investigators questioned Jones's upstairs neighbors, who told them that, on the date of the murder, a man who was not D.M. was at the door of Jones's apartment. A few months earlier, D.M. had a confrontation with one of the upstairs neighbors in Jones's apartment. That neighbor told the investigators that the man who was at Jones's apartment when the murder occurred was the same man who had been in her apartment

---

[2] "Reverse-*Spreigl*" evidence is evidence of other crimes, wrongs, or bad acts committed by the alleged alternative perpetrator used to cast reasonable doubt on the identification of the defendant as the person who committed the charged crime. *State v. Jones*, 678 N.W.2d 1, 16 (Minn. 2004).

3

during the neighbor's earlier confrontation with D.M.  D.M. later identified Davis as the man who had been in the apartment during the confrontation.

Investigators conducted an initial interview with Davis on January 1, 2012.  Davis said that, on December 22, he attended several appointments in the morning and in the early afternoon he went to Target in Brooklyn Center and then drove back to A.M.'s apartment.  Investigators confirmed that Davis had gone to Target on December 22, but he was there at a later time than he had suggested to them.  When investigators searched Davis's St. Paul apartment on January 3, they found several of the stolen items, including jewelry and D.M.'s gun, which they subsequently determined was the murder weapon.

Shortly after the search was completed, Davis was arrested and investigators interviewed him again.  He initially did not respond when asked why he had the murder weapon.  When questioned further, Davis said that he had received a call and was asked to help with a burglary.  Davis characterized the incident in Jones's apartment as a burglary that went "bad."  Davis was subsequently indicted for first-degree felony murder.

While in custody awaiting trial, Davis discussed the murder with another inmate.  Davis claimed that, among other things, the burglary was part of a scam to take items from the apartment temporarily so that the tenants could avoid paying rental fees for the items.  The inmate subsequently testified at trial about Davis's explanations for the burglary and murder and indicated that Davis's explanations were unconvincing.

Before trial, Davis moved to introduce reverse-*Spreigl* evidence to support an alternative-perpetrator defense: that D.M., Jones's boyfriend and the owner of the murder

4

weapon, committed the murder. The district court ruled that certain evidence supporting the alternative-perpetrator defense was admissible, but it excluded other reverse-*Spreigl* evidence involving D.M.'s past conduct.

After several days of trial, Davis delayed the start of the day's proceedings for a second time by initially refusing to leave the jail. Davis's attorney told the district court that Davis did not want to be present in the courtroom during the testimony of a particular witness. When Davis subsequently confirmed the reason for his absence, the district court advised Davis that it was unnecessary to refuse future transport from jail to court because the district court would ensure that Davis would not be present when the witness testified. The district court also warned Davis that if he refused transport again, the district court would assume that Davis was absent without justification and that the trial would proceed without him. Davis confirmed that he understood. Several days later, when Davis refused to attend closing arguments, Davis's attorney informed the district court that she had advised Davis that his absence would be deemed a voluntary waiver. The district court ruled that Davis had voluntarily waived his right to be present by refusing to attend the proceeding.

Later that day, when the district court replayed the audio recording of Davis's post-arrest interview, Davis again refused to attend. As before, the district court ruled that Davis's refusal to attend the proceeding was a voluntary absence. Davis's attorney did not object to the district court's decision to proceed.

The jury subsequently found Davis guilty of first-degree felony murder and unlawful possession of a firearm. The district court convicted Davis of first-degree

5

felony murder, in violation of Minn. Stat. § 609.185(a)(3), and sentenced him to life in prison with the possibility of release. Davis now appeals.

II.

According to the State's argument at trial, Davis killed Jones while committing burglary. At the conclusion of the evidence, the district court instructed the jury on the first element of first-degree felony murder as follows:

> First, the defendant or an accomplice was committing the crime of burglary. This element is satisfied if there is proof beyond a reasonable doubt that the defendant or an accomplice entered a building without the consent of the person in lawful possession and intended to commit or committed a theft while in the building.

Although Davis did not object to this instruction at trial, he now contends that this instruction was erroneous for two reasons. First, he argues that the instruction was incomplete because the district court did not define the crime of theft, even though it is an element of the predicate offense of burglary. Second, Davis argues that the district court misstated the "intent to steal" element of burglary. We address each argument in turn.

A.

Before reaching the merits of the arguments, we address Davis's failure to raise these issues at trial. A defendant generally forfeits the right to contest jury instructions on appeal when the defendant fails to object at trial. *State v. LaForge*, 347 N.W.2d 247, 251 (Minn. 1984). An exception to this general rule allows us to consider such a claim under plain-error review, which requires the defendant to establish (1) an error, (2) that is plain, and (3) that affects the defendant's substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998); *see* Minn. R. Crim. P. 31.02. When these three requirements are

6

met, "we may correct the error only if it seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *State v. Kelley*, 855 N.W.2d 269, 274 (Minn. 2014) (alteration in original) (quoting *State v. Crowsbreast*, 629 N.W.2d 433, 437 (Minn. 2001) (internal quotation marks omitted)).

B.

Davis argues that the district court erred by failing to instruct the jury on the legal definition of the crime of theft, the predicate offense for the burglary. Specifically, he contends that the district court should have instructed the jury that it had to find that he took property from Jones's apartment "with intent to deprive the owner permanently of possession of the property." Minn. Stat. § 609.52, subd. 2(a)(1) (2014). Because he did not intend to "deprive the owner permanently of possession," Davis argues, if the jury had been properly instructed, the jury could have found him not guilty of burglary and, consequently, not guilty of first-degree felony murder. Davis claimed at trial that the burglary was a scam to take rented items from the tenants of the apartment so that they would no longer have to pay rental fees for the items. If the jury believed this explanation, Davis argues, his actions would not meet the statutory definition of theft. *See id.*

To receive a new trial on this ground, Davis first must show that the district court erred in its jury instructions. A district court has "considerable latitude" when selecting the language of jury instructions. *Gulbertson v. State*, 843 N.W.2d 240, 247 (Minn. 2014). Yet jury instructions " 'must fairly and adequately explain the law,' " *id.* (quoting *State v. Carridine*, 812 N.W.2d 130, 142 (Minn. 2012)), and "define the crime charged,"

7

*id.* (citing *State v. Kuhnau*, 622 N.W.2d 552, 556 (Minn. 2001)). Jury instructions that confuse, mislead, or materially misstate the law are erroneous. *State v. Vang*, 847 N.W.2d 248, 261 (Minn. 2014). We review a district court's jury instructions as a whole to determine whether they correctly state the law. *Id.* When jury instructions contradict the plain language of the statute or an interpretation of the statute previously adopted by our court, they are erroneous. *See State v. Pendleton*, 567 N.W.2d 265, 270 (Minn. 1997); *see also State v. Vance*, 734 N.W.2d 650, 656-57 (Minn. 2007). Davis argues that the district court committed plain error by not including the definition of theft in its burglary instruction because the statements he made to a fellow inmate supported his alternative defense—that he had permission to take the items temporarily and, therefore, did not commit a theft.

As an initial matter, we observe that the third-degree burglary statute uses the term "steals," not "commits theft." Minn. Stat. § 609.582, subd. 3 (2014). It is well established that "detailed definitions of the elements to the crime need not be given in the jury instructions if the instructions do not mislead the jury or allow it to speculate over the meaning of the elements." *Peterson v. State*, 282 N.W.2d 878, 881 (Minn. 1979). Here, the failure to provide a definition of "theft" or "steal" to the jury did not mislead the jury or allow it to speculate over the meaning of the element. Moreover, the "temporary" taking of an item does not provide a blanket defense to a theft charge. *See* Minn. Stat. § 609.52, subd. 2(a)(5) (2014) (providing that the acts constituting theft include "any of the acts listed in this subdivision but with intent to exercise temporary control" in one of three enumerated manners, including "an indifference to the rights of

8

the owner"). We therefore conclude that the district court's omission of the legal definition of theft from its jury instructions on burglary as a predicate offense to first-degree felony murder was not an error, much less a plain error that affected Davis's substantial rights.[3]

## C.

Davis also argues that the jury instruction misstated the law with respect to the intent required to commit the crime of burglary. A person commits third-degree burglary when that person "enters a building without consent and with intent to steal," or "enters a building without consent and steals . . . while in the building." Minn. Stat. § 609.582, subd. 3. However, the district court instructed the jury that a burglary was committed if a person or an accomplice entered a building without consent "and intended to commit or committed a theft while in the building." Davis contends that the district court's instruction was erroneous because it failed to inform the jury that it could find him guilty

---

[3] We are not alone in our conclusion that a district court's failure to define "theft" or "steal" in a burglary instruction is not an error, much less a plain error. *See State v. Forde*, 315 P.3d 1200, 1221 (Ariz. 2014) (holding that the trial court did not err by failing to define theft as part of its burglary instruction because a trial court need not " 'define every phrase or word used in the [jury] instructions, especially when they are used in their ordinary sense and are commonly understood' "); *cf. Commonwealth v. Yarris*, 549 A.2d 513, 527 (Pa. 1988) (holding that the trial court's recitation of theft as an element of the crime of robbery is adequate); *State v. Ng*, 750 P.2d 632, 639 (Wash. 1988) (holding that theft is a term of such common understanding as to allow the jury to find a defendant guilty of robbery).

We also observe that the definition of theft that Davis contends should have been given is itself incomplete and misleading. Davis urged the district court to define theft consistent with the provisions of Minn. Stat. § 609.52, subd. 2(a)(1). Had the district court granted Davis's request, the jury would have been instructed on only one of 18 ways in which theft can be committed. *See* Minn. Stat. § 609.52, subd. 2(a).

9

of burglary only if the jury determined that Davis intended to steal *at the time he entered* the building. The instruction was erroneous, Davis argues, because it permitted the jury to find him guilty of felony murder if the jury determined that he formed an intent to commit the theft *after* entering the building, even if he did not actually commit a theft. Because Davis did not object to the jury instruction at trial, we again apply the plain-error standard of review. *See Griller*, 583 N.W.2d at 740.

A conviction of felony murder with burglary as the predicate offense requires proof beyond a reasonable doubt of both the elements of felony murder and the elements of burglary. Minnesota's felony-murder statute provides, in pertinent part:

> Whoever does any of the following is guilty of murder in the first degree and shall be sentenced to imprisonment for life: . . . causes the death of a human being with intent to effect the death of the person or another, while committing or attempting to commit burglary . . . .

Minn. Stat. § 609.185(a)(3). The third-degree burglary statute provides:

> Whoever enters a building without consent and with intent to steal . . . , or enters a building without consent and steals . . . while in the building, either directly or as an accomplice, commits burglary in the third degree . . . .

Minn. Stat. § 609.582, subd. 3. Whether a district court's jury instructions correctly state the law presents a question of statutory interpretation, which we review de novo. *See State v. Wilson*, 830 N.W.2d 849, 852 (Minn. 2013). We apply a statute's plain meaning when the statutory language is unambiguous. *State v. Leathers*, 799 N.W.2d 606, 608 (Minn. 2011); *see* Minn. Stat. § 645.16 (2014).

Section 609.582, subdivision 3, addresses the intent element of burglary with the following language: "[E]nters a building without consent and with intent to steal or

10

commit any felony or gross misdemeanor while in the building."[4] This language requires the offender to possess the intent to steal at the time of entry when the offender does not commit a felony or gross misdemeanor while in the building. When the district court changed the language from "enter[ed] . . . with intent," as provided by the statute, to "entered . . . *and* intended" (emphasis added), the district court effectively instructed the jury that it could find Davis guilty if he entered the apartment without an intent to steal, then formed an intent to steal while in the apartment, but ultimately chose not to steal anything while in the apartment. Therefore, Davis's argument that the district court's jury instructions were inconsistent with the statutory language is well-founded. The district court erred.

Assuming, without deciding, that the district court's error was plain, we next consider whether the plain error affected Davis's substantial rights. An error affects a defendant's substantial rights when there is a reasonable likelihood that the instruction had a significant effect on the jury verdict. *State v. Baird*, 654 N.W.2d 105, 113 (Minn. 2002). Here, the likelihood that the erroneous instruction had any effect on the verdict, much less a significant effect, is less than remote when we consider the two defenses that Davis offered for the jury's consideration. Davis's primary defense at trial was that he was not at the apartment and that Jones's boyfriend was the murderer. This alternative-perpetrator defense does not implicate the intent element of burglary. If the jury had

---

[4] The guides for jury instructions for burglary in the third degree also use the language "with intent to steal." 10A Minn. Dist. Judges Ass'n, *Minnesota Practice— Jury Instruction Guides, Criminal*, CRIMJIG 17.10 (5th ed. 2006).

11

believed Davis, it could have found him not guilty based on any of the other elements of burglary or felony murder. Moreover, Davis's second defense—that he had permission to take the items temporarily—does not implicate the intent element of burglary because there is no evidence that Davis entered the apartment without an intent to steal, subsequently formed an intent to steal while in the apartment, but ultimately chose not to steal anything while in the apartment. Accordingly, because the district court's instruction on the intent element of burglary did not affect either of Davis's defenses at trial, we conclude that the district court's error did not affect Davis's substantial rights and, therefore, does not constitute reversible plain error.

III.

Davis also argues that the district court's jury instructions improperly suggested the order in which the jury should consider the charges against him. Because Davis did not object to the jury instructions at trial, we apply the plain-error standard of review. *Griller*, 583 N.W.2d at 740.

We have held that a district court errs when it suggests the order in which the jury should consider the charges. *See State v. Prtine*, 784 N.W.2d 303, 316 (Minn. 2010); *State v. Dahlstrom*, 276 Minn. 301, 311, 150 N.W.2d 53, 61 (1967). A district court also errs when it " 'instruct[s] the jury to consider the lesser crimes only if it finds the defendant not guilty of the charged offense.' " *Prtine*, 784 N.W.2d at 316 (quoting 10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal*, CRIMJIG 3.20 cmt. (5th ed. 2006)). The jury's consideration of both the greater- and

12

lesser-included offenses is important because such consideration may cause the jury to evaluate the evidence differently as to an essential element. *Id.*

Davis argues that the facts here are analogous to those of *Prtine*, in which we concluded that the district court committed plain error. In *Prtine*, when asked by a juror, " '[I]f we ruled on first degree murder, we wouldn't rule on second degree murder?', " the district court advised the jury to proceed " 'down the line' " of charges. *Id.* at 317. The district court in *Prtine* also instructed the jury that it was not required to consider the remaining charges after arriving at a guilty verdict. *Id.*

Here, although the district court did not use language similar to the *Prtine* court's "down the line" instruction, the district court advised the jury that it "need not consider . . . the lesser offenses that are now being submitted." When faced with several possible verdicts, as the jury was here, the jury easily could have interpreted instructions that it "need not consider" lesser offenses to mean that it should consider the most serious charge first. Logically, the jury could have concluded from that instruction that if it found the defendant guilty of the most serious charge, it need not continue its deliberations. Because the district court's instruction reasonably could be construed as suggesting an order in which the jury should consider the charges, the district court erred.

The district court's error, however, was neither clear nor obvious. We have not previously determined that instructing a jury that it "need not consider . . . lesser offenses," by itself, is error. And the district court neither ordered the jury to proceed in a particular manner, as in *Prtine*, nor made explicit suggestions, as in *Dahlstrom*. *See Dahlstrom*, 276 Minn. at 311, 150 N.W.2d at 61 (concluding, after the district court

13

expressly provided the jury with a suggested procedure for considering the charges, that a court should not impose its views "as to the order of procedure to be followed by the jurors"). Therefore, the district court's error was not plain, and Davis is not entitled to relief on this ground.

IV.

We next consider whether the district court abused its discretion by excluding alternative-perpetrator evidence of D.M.'s alleged bad acts. We review a district court's evidentiary rulings for an abuse of discretion. *State v. Graham*, 764 N.W.2d 340, 351 (Minn. 2009). Reversal is warranted only when an erroneous ruling resulted in prejudice. *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003).

A defendant has a constitutional right to present a complete defense, which includes the right to present evidence that the crime was committed by another person. *State v. Atkinson*, 774 N.W.2d 584, 589 (Minn. 2009). The purpose of alternative-perpetrator evidence is to create a reasonable doubt as to the defendant's guilt. *State v. Larson*, 787 N.W.2d 592, 597 (Minn. 2010). Alternative-perpetrator evidence is admissible only when it "has an inherent tendency to connect the alternative party with the commission of the crime." *State v. Jones*, 678 N.W.2d 1, 16 (Minn. 2004). After meeting this threshold requirement, the defendant must meet three additional requirements before introducing evidence of other bad acts committed by the alternative perpetrator, which is commonly referred to as "reverse-*Spreigl* evidence." *State v. Miller*, 754 N.W.2d 686, 700 (Minn. 2008). The defendant must show "(1) clear and convincing evidence that the alleged alternative perpetrator participated in the reverse-

14

*Spreigl* incident; (2) that the reverse-*Spreigl* incident is relevant and material to defendant's case; and (3) that the probative value of the evidence outweighs its potential for unfair prejudice." *Jones*, 678 N.W.2d at 16-17 (footnote omitted). When introducing reverse-*Spreigl* evidence, the proponent also must " 'comply with procedural and evidentiary rules.' " *State v. Scanlon*, 719 N.W.2d 674, 684 (Minn. 2006) (quoting *State v. Blom*, 682 N.W.2d 578, 621 (Minn. 2004)).

The district court admitted several pieces of evidence that Davis offered in support of his alternative-perpetrator defense, including that (1) D.M. was in possession of the gun that caused Jones's death, (2) D.M. was at the crime scene and located Jones's body first, (3) Jones had D.M.'s DNA under her fingernails, (4) D.M. lied to the police about owning a gun, and (5) D.M. threatened Jones's family after the murder. But the district court excluded reverse-*Spreigl* evidence involving D.M.'s assaults, both alleged and proven, on other family members; D.M.'s alleged assault of two individuals unrelated to this case; and Jones's statement to her mother that D.M. had choked her. The district court concluded that evidence of these assaults was not relevant and that Jones's statement was inadmissible hearsay.

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401. An alternative perpetrator's past crimes or bad acts are relevant to a defendant's case only when they are sufficiently similar to the charged crime with respect to time, place, or modus operandi. *State v. Swaney*, 787 N.W.2d 541, 558 (Minn. 2010). In *Swaney*, a first-degree murder

15

case, we affirmed the district court's exclusion of reverse-*Spreigl* evidence of a robbery and kidnapping committed by the alleged alternative perpetrator because the charged offense and the prior act were not sufficiently similar. *Id*. at 559. The reverse-*Spreigl* incident in *Swaney* occurred about three weeks before the murder. *Id*.

Here, most of the alleged assaults lack close temporal proximity, having occurred up to several years before the murder. One occurred more than four years before the murder, when D.M. was 14 years old. The assaults also were not committed in the same way as the murder. Although the victim here was shot to death, none of the proffered evidence established that D.M. used a gun in any prior assault. The district court did not abuse its discretion by excluding the reverse-*Spreigl* evidence because D.M.'s acts were not sufficiently similar to the murder to be relevant.

The district court also did not abuse its discretion by excluding Jones's hearsay statement to her mother that D.M. had choked her. The district court determined that the statement did not fall within any of the hearsay exceptions, including rule 807, the residual hearsay exception. Minnesota Rules of Evidence 807 provides:

> A statement not specifically covered by rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Minn. R. Evid. 807. Courts look at the totality of the circumstances to determine whether a hearsay statement has "circumstantial guarantees of trustworthiness." *State v.*

16

*Robinson*, 718 N.W.2d 400, 408 (Minn. 2006). The relevant circumstances under Minn. R. Evid. 807 are "those circumstances actually surrounding the making of the statements." *State v. Lanam*, 459 N.W.2d 656, 661 (Minn. 1990).

As a guarantee of trustworthiness, Davis relies on the fact that Jones made the statement to her mother not long before the murder. Other facts in the record call into question the statement's trustworthiness, however. The prosecutor informed the district court that Jones's mother told her that "she had no recollection of making any statements to the police on the night of the incident . . . that [D.M.] had choked her daughter or that her daughter had told her [D.M.] choked her." Davis failed to provide any evidence to rebut the prosecutor's account. Thus, whether Jones's hearsay statement has circumstantial guarantees of trustworthiness is ambiguous at best. Because Davis has not shown that Jones's statement had circumstantial guarantees of trustworthiness, the district court did not abuse its discretion by excluding the statement as inadmissible hearsay. Accordingly, the district court did not abuse its discretion when it excluded the alternative-perpetrator evidence offered by Davis.

V.

Davis next contends that the district court violated Minn. R. Crim. P. 26.03, subd. 1, by proceeding with his trial while he was absent from the courtroom. Because Davis failed to object at trial to the district court's alleged violation of rule 26.03, subdivision 1, he is entitled to a new trial only if he can satisfy the plain-error standard. *See State v. Mosley*, 853 N.W.2d 789, 797 (Minn. 2014).

17

Minnesota Rules of Criminal Procedure 26.03, subdivision 1(1), provides generally that "[t]he defendant must be present at arraignment, plea, and for every stage of the trial." However, subdivision 1(2) provides in pertinent part:

The trial may proceed to verdict without the defendant's presence if:

1. The defendant is absent without justification after the trial starts; or

2. [t]he defendant, after warning, engages in conduct that justifies expulsion from the courtroom because it disrupts the trial or hearing. But, as an alternative to expulsion, the court may use restraints if necessary to ensure order in the courtroom.

Minn. R. Crim. P. 26.03, subd. 1(2). Rule 26.03, subdivision 1, also provides: "In felony cases, the court may, on the defendant's motion, excuse the defendant's presence except at arraignment, plea, trial, and sentencing." *Id.*, subd. 1(3)(2).

Davis argues that subdivision 1(3)(2)'s requirement that a defendant be present at a felony trial prevents a defendant's waiver of presence under subdivision 1(2). Because subdivision 1(3)(2) disallows the district court from excusing the defendant's presence at trial, Davis contends, the district court must halt the trial proceedings even when the defendant is absent without justification under subdivision 1(2).

We review the interpretation of a procedural rule de novo. *State v. Dahlin*, 753 N.W.2d 300, 305 (Minn. 2008). The first question in our analysis is whether the rule's language is ambiguous and, therefore, subject to more than one reasonable interpretation. *Id.* at 305-06. If the rule's language is unambiguous, we apply its plain meaning. *Id*. at 305.

18

Davis's proposed interpretation of rule 26.03—that subdivision 1(3) controls over subdivision 1(2)—divorces subdivision 1(3) from its context. Courts are required to give effect to all provisions of a rule, if possible. *See Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000); *see also* Minn. Stat. § 645.16 (2014). Under Davis's interpretation, a district court would be allowed to proceed without a defendant's presence during trial only when the defendant was on trial for a misdemeanor and had requested to be excused. *See* Minn. R. Crim. P. 26.03, subd. 1(3)(3)-(4). Because Davis's proposed interpretation effectively ignores subdivision 1(2) and rule 26.03 in its entirety, it is not reasonable. The only reasonable interpretation of the rule is that a district court, even in a felony case, may proceed without the defendant present under the circumstances listed in subdivision 1(2). When read in the context of the rule as a whole, the plain meaning of subdivision 1(3)(2) does not prevent a district court from waiving a defendant's presence under subdivision 1(2).

Having determined that subdivision 1(2) allows a district court to conduct a trial without a defendant present when the defendant's absence is without justification, we consider the district court's actions here. After Davis told the district court that he did not want to be present for a particular witness's testimony, both the district court and Davis's counsel warned Davis of the consequences if he refused to attend the trial. Specifically, the district court advised Davis that it would assume his absence was

without justification in the future and that the trial would continue in Davis's absence.[5]

Because the district court correctly applied subdivision 1(2), we conclude that the district court did not err when it proceeded with the trial during Davis's absences.

## VI.

For the foregoing reasons, Davis is not entitled to relief on the grounds raised in this appeal.

Affirmed.

---

[5] The district court did not conclude expressly that Davis's initial absence was an absence without justification under rule 26.03, subdivision 1(2). However, if a refusal to attend trial, without any prior notice that such a refusal would be deemed a waiver, demonstrates a knowing waiver of the constitutional right to be present, surely a refusal to appear, with prior notice of the consequences of the refusal, demonstrates a knowing waiver. *See State v. Worthy*, 583 N.W.2d 270, 277-78 (Minn. 1998) (holding that the district court did not abuse its discretion by proceeding with the trial after the defendants voluntarily left the courtroom).