*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0097**

State of Minnesota,
Respondent,

vs.

Dana John Thompson,
Appellant

**Filed January 17, 2016
Reversed and remanded
Worke, Judge**

Wabasha County District Court
File No. 79-CR-14-412

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, St. Paul, Minnesota; and

Karen Kelly, Wabasha County Attorney, Wabasha, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Anders J. Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Worke, Judge; and Bratvold, Judge.

## U N P U B L I S H E D   O P I N I O N

**WORKE**, Judge

Appellant challenges his terroristic-threats conviction, arguing that the district court abused its discretion by failing to instruct the jury on the crime of violence he threatened

and the elements of that crime. Appellant also argues that the district court committed plain error by failing to give a specific unanimity instruction and raises several issues in his pro se supplemental brief. We reverse and remand.

**FACTS**

In early 2014, appellant Dana John Thompson was involved in legal proceedings regarding the custody of his daughter. Thompson appeared before the same Hennepin County judge on multiple occasions. At the first hearing, Thompson yelled, gestured, and used profane language.

While his case was pending, Thompson called the judge's law clerk several times, left voicemails, and sent the law clerk e-mails. In one voicemail, Thompson said that he had friends on the Minnesota Board on Judicial Standards and that he was going to report everyone in the judge's chambers.

During a May 2, 2014 telephone hearing, Thompson again yelled and used profanity. The judge terminated the call. Thompson called back and continued to speak inappropriately. The judge ended the second call. After the hearing, the judge issued an order awarding custody of Thompson's daughter to the child's mother. Thompson responded by sending the judge's clerk an e-mail saying that the judge had made a mistake and would be punished. Thompson also said that he wanted the judge to get cancer. Thompson sent another e-mail that just stated the word "c-nt."

On May 2, Thompson also posted several comments to his Facebook page. At approximately 1:40 p.m., Thompson posted the following comment: "ladies and gentleman [the] judge . . . of the 4th judicial district family court in Hennepin county just

took [my daughter] . . . . . . .you know the rest f--k you and there will be penalty." At about 8:40 p.m., Thompson posted two more comments. The first said, "judge . . . I hope you trip and fall dunb [sic] b--ch she was gonna graduate her dare calaass [sic] next week stupid f--k mesheliosphandantialops to9 [sic] you b--ch." The second was posted directly beneath the first and said, "1 million to whoever brings me her head in a walmrt [sic] bag. . . .lol."

Thompson was charged with one count of terroristic threats for his comments about the judge and another count of terroristic threats for a comment about a sheriff's deputy.[1] During a police interview, he claimed that his comment about the judge suffering a "penalty" was a threat to file a complaint with the board on judicial standards. He said that he previously filed a complaint against a different judge and that judge was reprimanded as a result. His head-in-a-bag statement was about his daughter's mother, not the judge. He also said that the statement was meant as a joke.

At trial, Thompson's testimony about the posts was mostly consistent with his statement to police. A jury convicted him of the terroristic-threats count related to the judge and acquitted him of the count related to the sheriff's deputy. This appeal followed.

## DECISION

In his principal brief, Thompson raises two challenges to the district court's jury instructions. The district court has wide latitude in crafting jury instructions and will not be reversed absent an abuse of discretion. *State v. Huber*, 877 N.W.2d 519, 522 (Minn. 2016). A district court abuses its discretion "if its jury instructions confuse, mislead, or

---

[1] Thompson was also charged with a third count of terroristic threats for a comment he made about another judge. That charge was later dismissed by the state.

materially misstate the law." *State v. Kelley*, 855 N.W.2d 269, 274 (Minn. 2014). "[D]etailed definitions of the elements to the crime need not be given in the jury instructions if the instructions do not mislead the jury or allow it to speculate over the meaning of the elements." *State v. Davis*, 864 N.W.2d 171, 177 (Minn. 2015) (quotation omitted). This court reviews the district court's "jury instructions as a whole to determine whether the instructions accurately state the law in a manner that can be understood by the jury." *Kelley*, 855 N.W.2d at 274.

### Crime-of-violence-threatened instruction

Any person who "threatens, directly or indirectly, to commit *any crime of violence* with purpose to terrorize another . . . or in a reckless disregard of the risk of causing such terror" is guilty of terroristic threats. Minn. Stat. § 609.713, subd. 1 (2012) (emphasis added). Thompson argues that the district court abused its discretion by failing to "identify the predicate crime of violence" he threatened and by failing to instruct the jury on the elements of that crime.

As a threshold matter, the parties disagree on the applicable standard of review. Thompson argues that he objected to the district court's instruction and that we should therefore review for an abuse of discretion. The state argues that Thompson failed to object and that the district court's instruction is accordingly subject only to plain-error analysis. *See State v. Cross*, 577 N.W.2d 721, 726 (Minn. 1998) ("[A] failure to object will not cause an appeal to fail if the instructions contain plain error affecting substantial rights or an error of fundamental law.").

4

To preserve an issue for appeal and avoid the plain-error standard, a party must "bring the issue to the attention of the [district] court." *State v. Onyelobi*, 879 N.W.2d 334, 353 n.16 (Minn. 2016) (quotation omitted). The parties and the district court had extensive discussions about how to instruct the jury on the "crime of violence" requirement. Thompson's attorney requested that the crime of violence threatened "be specified as for second and third degree" assault. The district court rejected that request. Because Thompson brought the "issue to the attention of the [district] court," he preserved this issue for appeal and we review for an abuse of discretion. *See id.* (quotation omitted).

The district court failed to instruct the jury on the specific crime of violence threatened or the elements of that crime. The instruction contained no definition or explanation of the meaning of "crime of violence." The state concedes that the district court's instruction was erroneous.

As stated above, a defendant is guilty of terroristic threats only if he threatens to commit a "crime of violence." Minn. Stat. § 609.713, subd. 1. "'[C]rime of violence' has the meaning given 'violent crime' in section 609.1095, subdivision 1, paragraph (d)." *Id.* The definition of "violent crime" does not include domestic assault or fourth- or fifth-degree assault. Minn. Stat. § 609.1095, subd. 1(d) (2012); *State v. Jorgenson*, 758 N.W.2d 316, 323 (Minn. App. 2008). Accordingly, to avoid confusing the jury or allowing it to speculate, "[a] proper jury instruction on a terroristic threats charge must specifically limit the definition of 'violent crime' to the applicable offenses listed in Minn. Stat. § 609.1095, subd. 1(d)." *Jorgenson*, 758 N.W.2d at 324. The jury must be instructed on the definition and elements of the specific crime of violence that the defendant allegedly threatened. *Id.*

5

at 325; *see also* 10 *Minnesota Practice*, CRIMJIG 13.107 (2015) (advising that jury be instructed on crime of violence threatened and elements of that crime). By failing to abide by these requirements, the district court abused its discretion.

When the district court abuses its discretion in instructing the jury, we apply harmless-error analysis. *State v. Watkins*, 840 N.W.2d 21, 28-29 (Minn. 2013). "A properly objected-to instructional error regarding an element of an offense requires a new trial only if it cannot be said beyond a reasonable doubt that the error had no significant impact on the verdict." *State v. Koppi*, 798 N.W.2d 358, 364 (Minn. 2011) (quotations omitted).

The state argues that by asking for the judge's head in a bag, Thompson threatened homicide. Because there is no question that homicide is a crime of violence, the state maintains that the erroneous instruction was harmless. *See* Minn. Stat. § 609.1095, subd. 1(d) (defining "violent crime" to include first-, second-, and third-degree murder; first- and second-degree manslaughter; and criminal vehicular homicide). We disagree.

The head-in-the-bag threat was not the only threat against the judge that the state alleged at trial. In her closing argument, the prosecutor claimed that Thompson's statement that "there will be penalty" was also a threat to commit a crime of violence:

> Now, then we have the first Judge . . . post. This is the, "you know the rest f--k you and there will be a penalty." Again, this is another person who . . . Thompson blames for losing custody of his child. And again, if you – if you factor in all of the behaviors in the courtroom, all of the messages that he sent to this judge, the increased security detail in the courtroom and near her home, it's reasonable to conclude that this is a threat. This isn't just a metaphor for judicial reprimand anymore. And then you have the "I hope you trip and fall" and "head in a

6

walmart bag." Now, that's a little bit more of a clear image of violence, so just think about that in the context of everything that happened between . . . Thompson and [the] [j]udge.

Earlier in her closing argument, the prosecutor read the "there will be penalty" post in full and stated,

> There was a lot of discussion about this post and what exactly "penalty" means. On the one hand, . . . Thompson has made it very clear on more than one occasion that he's going to file a complaint with the [board on judicial standards], but given his history with the Court, it's pretty reasonable to draw the inference that "penalty" means something more here. Think about it.

The jury could have convicted Thompson based on a finding that the words "there will be penalty" threatened an assault that would not meet the definition of "violent crime" in section 609.1095, subd. 1(d).

In addition, Thompson raised a plausible defense that the head-in-the-bag comment was not a serious threat aimed at the judge. In his closing argument, Thompson's attorney claimed that the statement referred to the mother of his daughter. This claim was supported by Thompson's testimony and his statement to police. More convincingly, Thompson's attorney argued that the statement was not a serious threat. This claim is supported by Thompson's police interview and the post itself. The post ends with "lol." Thompson's attorney maintained that "lol" stands for "[l]augh out loud" and is "an explicit recognition" that the post is not a real threat.

A statement is a threat only if "the communication in its context" would reasonably "create apprehension that its originator will act according to its tenor." *State v. Schweppe*, 306 Minn. 395, 399, 237 N.W.2d 609, 613 (1975) (quotation omitted). In addition, a

7

defendant cannot be convicted of terroristic threats unless he acted with the intention of terrorizing the victim or in "reckless disregard of the risk of causing such terror." Minn. Stat. § 609.713, subd. 1. The jury may have determined that the head-in-a-bag post was not a threat at all or did not show the necessary state of mind for terroristic threats. Accordingly, Thompson's conviction may be based on the "there will be penalty" post, without regard to the head-in-a-bag post.

The state also argues that the instruction was harmless because Thompson's attorney told the jury in his closing argument that "simple assault doesn't qualify as a crime of violence." Therefore, there is no possibility that the jury convicted Thompson based on a threatened crime that is not a crime of violence. But, in her rebuttal, the prosecutor explicitly urged the jury to disregard the defense attorney's explanation of the law and rely only on the district court's instructions. The district court's instructions also directed the jury to "disregard" any description "of the law that differs from the law I give you." Moreover, even assuming that the jury relied on Thompson's attorney's explanation of the law, the jurors were given no instruction on how a "simple assault" differs from an assault or other offense that does qualify as a crime of violence.

Finally, the state claims that it is highly unlikely that the jury convicted Thompson based on a threatened crime that does not meet the definition of crime of violence because the jury acquitted Thompson of threatening the deputy. The state does not explain why it believes this to be the case. Regardless, this court has previously stated that acquittals "shed no light on which circumstances the jury believed or disbelieved." *State v. Montermini*, 819 N.W.2d 447, 461 (Minn. App. 2012). An acquittal may simply be the

result of the jury exercising the "power of lenity." *Id.*; *see State v. Perkins*, 353 N.W.2d 557, 561 (Minn. 1984) (defining the jury's power of lenity as "the power to bring in a verdict of not guilty despite the law and the facts"). The acquittal on the deputy count has no bearing on the count related to the judge.

The district court's failure to instruct the jury on the crime threatened and the elements of that crime allowed the jury to speculate about the meaning of the term "crime of violence." *Cf. Davis*, 864 N.W.2d at 177. The jury may have convicted Thompson based on a finding that he threatened the judge with an assault that is not a "crime of violence." Accordingly, the error was not harmless beyond a reasonable doubt and warrants a new trial.

### *Specific unanimity instruction*

Thompson next argues that the district court committed plain error affecting his substantial rights by failing to give a specific unanimity instruction. The state alleged that Thompson made multiple threats against the judge, but Thompson was charged with only one count related to those threats. The lack of a specific unanimity instruction therefore allowed the jury to convict Thompson without agreeing on which threat constituted the offense, violating his right to a unanimous verdict. While our decision on the crime of violence instruction by itself requires reversal, we address the remaining issues raised by Thompson to give the district court guidance on remand.

Because Thompson did not object to the lack of a specific unanimity instruction in district court, we may review only for plain error. *State v. Milton*, 821 N.W.2d 789, 805 (Minn. 2012). Under the plain-error test, this court considers whether the district court's

9

instructions contained "an (1) error (2) that was plain and (3) that affected the defendant's substantial rights." *Id*. If all three of these prongs are established, we determine whether we must "address the error to ensure [the] fairness and integrity of the judicial proceedings." *Id.* (quotation omitted).

### *Error*

In all criminal cases, a jury's verdict must be unanimous. Minn. R. Crim. P. 26.01, subd. 1(5). But "the jury need not always decide unanimously which of several possible means the defendant used to commit the offense in order to conclude that an element has been proved beyond a reasonable doubt." *State v. Ihle*, 640 N.W.2d 910, 918 (Minn. 2002). For example, in a terroristic-threats case, the jury need not unanimously agree on which of two victims the defendant intended to terrorize, as long as the jury unanimously agrees that the defendant committed the crime of terroristic threats. *State v. Begbie*, 415 N.W.2d 103, 106 (Minn. App. 1987), *review denied* (Minn. Jan. 20, 1988). This is because "the terroristic-threats statute does not make the identity of the person who is threatened an element of the crime." *State v. Stempf*, 627 N.W.2d 352, 356 (Minn. App. 2001). However, if the act itself is an element of the crime, the jury must unanimously agree on which act the defendant committed. *Id.* at 355 (citing *Richardson v. United States*, 526 U.S. 813, 824, 119 S. Ct. 1707, 1713 (1999)).

In *Stempf*, the state charged the defendant with one count of possession of a controlled substance "but alleged two distinct acts to support a conviction: (1) that he possessed methamphetamine found at the premises of his workplace; and (2) that he possessed methamphetamine found in the truck in which he was riding when he arrived at

10

work." *Id.* at 357. The district court denied Stempf's request for an instruction requiring the jury to return a unanimous verdict as to which of these two acts he committed. *Id.* at 357-58. We stated that when "jury instructions allow for possible significant disagreement among jurors as to what acts the defendant committed, the instructions violate the defendant's right to a unanimous verdict." *Id.* at 354. Because "[s]ome jurors could have believed [Stempf] possessed the methamphetamine found on the premises while other jurors could have believed [Stempf] possessed the methamphetamine found in the truck," the district court's refusal to give a specific unanimity instruction violated Stempf's right to a unanimous verdict. *Id.* at 358.

As in *Stempf*, the state charged Thompson with one count of terroristic threats against the judge. To convict, the jury had to find that on May 2, 2014, Thompson threatened to commit a "crime of violence with purpose to terrorize another . . . or in a reckless disregard of the risk of causing such terror." Minn. Stat. § 609.713, subd. 1. At trial, however, the state presented two distinct threats that it claimed established the offense: (1) the "there will be penalty" post, and (2) the head-in-a-bag post.[2] The posts are not part of a single threat as they were separated by approximately seven hours. As

---

[2] Thompson argues that the state presented evidence of five distinct threats: (1) the penalty post; (2) a video Thompson e-mailed to the judge's chambers saying that he hopes she gets cancer; (3) an e-mail that just said "c--t"; (4) the post saying "I hope you trip and fall"; and (5) the head-in-a-bag post. Because only the head-in-a-bag and penalty posts make any discernable threat, we do not address the remaining posts and e-mails. *See State v. Olson*, __ N.W.2d __, __, 2016 WL 7041883, at *5 (Minn. App. Dec. 5, 2016) (holding that by itself a statement expressing a mere hope that another will be subject to a crime of violence does not constitute a threat for the purposes of terroristic threats).

11

outlined above, in her closing argument, the prosecutor argued that each post was a separate threat to commit a crime of violence.

The district court gave a general unanimity instruction. The jury was instructed that "to return a verdict on any charge whether guilty or not guilty, each juror must agree with that verdict. Your verdicts must be unanimous." But the jury was not instructed that it needed to agree on which threat satisfied the elements of the offense. Like *Stempf*, the failure to give the specific unanimity instruction allowed the jury to find Thompson guilty of the offense while disagreeing as to whether the "there will be penalty" post or head-in-a-bag post constituted the terroristic threat.

### *Plain error*

An error is plain if it "contravenes case law, a rule, or a standard of conduct." *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). The district court's failure to give a unanimity instruction violated the precedent set in *Stempf*.

### *Affecting substantial rights*

"An error affects a defendant's substantial rights if the error was prejudicial and affected the outcome of the case." *Watkins*, 840 N.W.2d at 28. It is the defendant's burden to show a "reasonable likelihood that the error had a significant effect on the jury's verdict." *Milton*, 821 N.W.2d at 809 (quotations omitted). In this case, Thompson must prove that there is a reasonable likelihood that the jury would not have convicted him had they been given a specific unanimity instruction.

Thompson raised distinct and plausible defenses for each of the two threats. As to the "there will be penalty" threat, his attorney argued in closing that this was merely a

threat to file a complaint against the judge with the board on judicial standards. This argument was based on Thompson's testimony and his statement to police. The judge's law clerk also testified that Thompson had previously left a voicemail specifically threatening to report the judge to the board.

Thompson's defense to the head-in-a-bag post is outlined above. His attorney made a plausible argument that because the post ended with "lol," it was a joke and not a serious threat.

Given that Thompson raised distinct and plausible defenses as to both threats, there is a "reasonable likelihood" that some of the jurors convicted him based on the penalty threat and other jurors convicted him based on the head-in-a-bag threat. This issue may have been compounded by the district court's failure to instruct on the specific crime threatened. Had the district court instructed, for example, that the jury was required to find that Thompson threatened homicide, it would have made it difficult for the jurors to convict based on the "there will be penalty" post. Instead, the manner in which the jury was instructed allowed some jurors to convict on the penalty threat and others on the head-in-a-bag threat.

### *Fairness and integrity of the judicial proceedings*

Because the first three prongs of the plain-error test are satisfied, we must determine whether it is necessary to "address the error to ensure [the] fairness and integrity of the judicial proceedings." *Milton*, 821 N.W.2d at 805 (quotation omitted). We conclude that allowing Thompson to stand convicted of the charged offense when his right to a

13

unanimous verdict was violated and the jury may have acquitted him had they been properly instructed adversely affects the fairness and integrity of the proceedings.

*Pro se claims*

In his pro se supplemental brief, Thompson makes three additional claims: (1) that the prosecutor lied in closing argument when she said that Thompson threatened to "punish" the judge; (2) that the district court erred by denying his motion for a Minn. R. Crim. P. 20.02 evaluation; and (3) that the judge's law clerk lied during her testimony. After thoroughly reviewing each claim, we conclude that none has merit.

In sum, we reverse Thompson's conviction because the district court failed to properly instruct the jury on the crime of violence threatened and the elements of that crime. The district court also committed plain error by failing to give a specific unanimity instruction. These errors were not harmless and require reversal and remand for a new trial.

**Reversed and remanded.**