*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A24-1061**

State of Minnesota,
Respondent,

vs.

Anthony Wayne Quaderer,
Appellant.

**Filed May 19, 2025
Affirmed
Bjorkman, Judge**

Beltrami County District Court
File No. 04-CR-23-633

Keith Ellison, Attorney General, St. Paul, Minnesota; and

David L. Hanson, Beltrami County Attorney, Symon Schindler-Syme, Assistant County Attorney, Bemidji, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, John Donovan, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Bjorkman, Presiding Judge; Bratvold, Judge; and Harris, Judge.

**NONPRECEDENTIAL OPINION**

**BJORKMAN**, Judge

Appellant challenges his conviction of refusal to submit to chemical testing of his blood or urine as required by a search warrant. He argues that the district court abused its

discretion by (1) declining to instruct the jury that the state must prove the officer had probable cause to believe that appellant was driving while impaired, and (2) admitting testimony that people who refuse to perform field sobriety tests are impaired. In a pro se supplemental brief, he argues that the district court erred by denying his challenge to the search warrant. We affirm.

## FACTS

On a March evening in 2023, a Bemidji police officer stopped a vehicle because of its loud exhaust and identified the driver as appellant Anthony Wayne Quaderer. As they interacted, the officer noticed that Quaderer was "sweating profusely," despite the below-freezing temperature. The officer also noticed that Quaderer's eyes were "glassy" and his pupils were constricted and not reacting to light. Based on these observations, the officer believed Quaderer was under the influence of a narcotic analgesic like fentanyl or heroin, or a central-nervous-system stimulant like cocaine or methamphetamine, or a combination thereof.

The officer asked Quaderer to perform field sobriety tests; Quaderer refused. The officer arrested Quaderer for driving while impaired, then obtained a search warrant to obtain a sample of Quaderer's blood or urine for testing. When the officer presented Quaderer the warrant, explained that refusal to test is a crime, and asked for a blood sample, Quaderer refused by shaking his head. He did the same when asked for a urine sample.

Quaderer was charged with felony test refusal under Minn. Stat. § 169A.20, subd. 2(2) (2022). Before trial,[1] the district court rejected Quaderer's challenge to the search warrant; granted the state's motion, over Quaderer's objection, to admit testimony from the officer about Qauderer's refusal to perform field sobriety tests; and denied Quaderer's request for an instruction to the jury that the state must prove that the officer had probable cause to believe that he was driving while impaired.

The matter proceeded to trial, at which the officer was the sole witness. He testified consistent with the facts above. When asked about Quaderer's refusal to perform field sobriety tests, the officer testified that, in his experience, when people refuse field sobriety testing "it's because they are so impaired that they know that they're going to perform poorly and they'd rather just skip the step." The jury found Quaderer guilty, and the district court sentenced him to 64 months' imprisonment.

Quaderer appeals.

## DECISION

**I.**      **The district court did not abuse its discretion by declining to instruct the jury that the state must prove the officer had probable cause to believe that Quaderer was driving while impaired.**

We review de novo whether a particular jury instruction accurately states the law, as indicated in the charging statute. *State v. Davis*, 864 N.W.2d 171, 176 (Minn. 2015). But we will not reverse a district court's refusal to give a requested jury instruction absent an abuse of discretion. *State v. Kelbel*, 648 N.W.2d 690, 703 (Minn. 2002).

---

[1] Quaderer's first trial ended in a hung jury. Unless indicated otherwise, all references to trial are to the second trial, which led to the conviction under review.

A district court has "considerable latitude" in determining the language of jury instructions, but the instructions must, as a whole, "fairly and adequately explain the law . . . and define the crime charged." *Davis*, 864 N.W.2d at 176 (quotations omitted). "To determine if a jury instruction correctly states the law, we analyze the criminal statute and the case law under it." *State v. Taylor*, 869 N.W.2d 1, 15 (Minn. 2015). A district court abuses its discretion if it instructs the jury in a manner that "confuses, misleads, or materially misstates the law." *State v. Segura*, 2 N.W.3d 142, 166 (Minn. 2024) (quotation omitted).

Quaderer contends that the district court abused its discretion by declining to instruct the jury that the state must prove that the officer had probable cause to suspect he was driving while impaired. We disagree.

The charging statute provides: "It is a crime for any person to refuse to submit to a chemical test . . . of [their] blood or urine as required by a search warrant." Minn. Stat. § 169A.20, subd. 2(2). As Quaderer acknowledges, this language expressly requires only proof of a search warrant, not separate proof that the officer had the probable cause necessary to obtain one. *See* Minn. Stat. § 626.08 (2022) (stating that "[a] search warrant cannot be issued but upon probable cause"). It also does not reference any other statute that imposes a probable-cause requirement, making it unlike the statute that criminalizes refusal to take a breath test. *See* Minn. Stat. § 169A.20, subd. 2(1) (2022) (citing Minn. Stat. § 169A.51 (2022)). In other words, probable cause to believe a driver is impaired is not an element of the charged test-refusal offense.

Moreover, we recently held that probable cause is not an element of test refusal under Minn. Stat. § 169A.20, subd. 2(2), and therefore need not be part of the jury instructions for that offense. *State v. Torrez*, 8 N.W.3d 674, 678-79 (Minn. App. 2024), *rev. granted* (Minn. Sept. 25, 2024). And while Quaderer asserts that *Torrez* was "wrongly decided," it is precedential authority that is binding on this court, unless and until the supreme court reverses it. *State v. Chauvin*, 955 N.W.2d 684, 691, 694-95 (Minn. App. 2021), *rev. denied* (Minn. Mar. 10, 2021). Accordingly, Quaderer's claim of instructional error fails.

## II. The district court did not commit reversible error by admitting testimony that people who refuse to perform field sobriety tests are impaired.

We review a district court's evidentiary rulings for an abuse of discretion. *Dolo v. State*, 942 N.W.2d 357, 362 (Minn. 2020). "Even if the district court's admission of evidence was in error, such admission is harmless if it did not significantly impact the verdict." *State v. Heller*, 12 N.W.3d 452, 466 (Minn. 2024).

Quaderer contends the officer's testimony about drivers who refuse field sobriety tests was "improper profile evidence." He is correct that evidence is inadmissible if it serves only to "impliedly urge[]" the jury to "infer that since defendant's conduct fit [a described] profile, the defendant must have been guilty." *Id.* at 467 (quotations omitted). But even assuming that the challenged testimony was inadmissible, its admission does not warrant reversal if it did not significantly impact the verdict. *Id.* at 466, 468.

We assess impact by independently reviewing the record and considering a nonexclusive list of factors: "(1) the manner in which the party presented the evidence,

5

(2) whether the evidence was highly persuasive, (3) whether the party who offered the evidence used it in closing argument, and (4) whether the defense effectively countered the testimony." *Id.* at 468 (quoting *State v. Bigbear*, 10 N.W.3d 48, 54 (Minn. 2024)). We also consider the strength of the evidence of guilt. *See id.* at 469.

Consideration of these factors satisfies us that the admission of the challenged testimony did not significantly impact the verdict. As Quaderer notes, the state did point to the challenged testimony during closing argument, which weighs against a conclusion of harmlessness. But it is the only factor that does so. The challenged testimony itself was a single statement that played a very small role in the presentation of evidence—much smaller than the officer's unchallenged testimony that Quaderer's condition (profuse sweating despite cold weather, glassy eyes, and constricted and unresponsive pupils) was consistent with him being under the influence of a controlled substance. While the officer's experience and expertise may have made his statement about the refusal of field sobriety testing persuasive, these credentials equally bolstered his other testimony that more directly addressed the question of Quaderer's impairment. Moreover, Quaderer was able to counter the testimony during his cross-examination of the officer, emphasizing that field sobriety testing is not mandatory and challenging the evidentiary basis for the officer's assertion that chemically impaired drivers are uniquely prone to refusing such testing. And most fundamentally, overwhelming evidence entirely independent of the challenged testimony proved the two key issues at trial: (1) whether a search warrant required Quaderer to submit to chemical testing of his blood or urine, and (2) whether he refused. On this record, any error in admitting the challenged testimony was harmless.

6

**III.    Quaderer is not entitled to relief based on his pro se challenge to the search warrant.**

In a pro se supplemental brief, Quaderer argues that the search warrant requiring him to submit to chemical testing of his blood or urine was invalid because the officer deliberately or recklessly omitted from the warrant application information regarding the reason for the traffic stop, requiring a hearing under *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978). The record reflects that this issue is not properly before us. Quaderer did not request a *Franks* hearing before his first trial. Nor did he request one in the written motion challenging the search warrant that he filed before his second trial. At the hearing on that motion, Quaderer referred to "an omission of relevant information" from the search warrant. The state objected that Quaderer had not preserved a *Franks* issue with a timely pretrial motion, as required under Minn. R. Crim. P. 10.01, subd. 2. The district court agreed and made no substantive ruling on the issue. Quaderer identifies no error in the district court's reasoning and, therefore, has not demonstrated a basis for relief.

**Affirmed.**